UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



| | |
|---|---|
| The JAY PETER KAUFMAN REVOCABLE TRUST, On behalf of Itself and All Others Similarly Situated,<br><br>　　　　　　　　　　Plaintiff,<br><br>vs.<br><br>NEW CENTURY FINANCIAL CORPORATION, BRAD A. MORRICE, ROBERT K. COLE, MARILYN A. ALEXANDER, HAROLD A. BLACK, FREDRIC J. FORSTER, EDWARD F. GOTSCHALL, DONALD E. LANGE, MICHAEL M. SACHS, RICHARD A. ZONA, PATTI M. DODGE, DAVID EINHORN, BEAR, STEARNS & CO., INC., MORGAN STANLEY & CO., INC., STIFEL NICOLAUS & COMPANY, INCORPORATED, and JEFFRIES & COMPANY, INC.,<br><br>　　　　　　　　　　Defendants. | Civ. No. 07 CV 2902<br><br>**MEMORANDUM IN SUPPORT OF THE JAY PETER KAUFMAN REVOCABLE TRUST'S MOTION FOR LEAD PLAINTIFF STATUS** |

## I.　PRELIMINARY STATEMENT

Plaintiff the Jay Peter Kaufman Revocable Trust ("Kaufman" or "Movant") respectfully submits this memorandum of law in support of its motion to be appointed Lead Plaintiff on behalf of a Class (or Sub-Class) consisting of all those who purchased or otherwise acquired the 9.75% Series B Preferred Stock of Defendant New Century Financial Corp. ("New Century") pursuant to and/or traceable to the August 15, 2006 offering and approving Movant's choice of Milberg Weiss & Bershad LLP ("Milberg Weiss") as Lead Counsel for the Class.

## II.   INTRODUCTION

Presently pending in California are numerous class action lawsuits against New Century Financial Corp. Movant's action,[1] filed on behalf of those purchasers (or acquirers) of Series B Preferred Stock pursuant and/or traceable to the August 15, 2006 offering ("the Series B Offering"), is brought under Sections 11 and 15 of the Securities Act of 1933 ("Securities Act") - and does not allege and does not sound in fraud. To the best of Movant's knowledge, all actions other than its own and one other are brought pursuant to the anti-fraud provisions of the federal securities laws, namely Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 promulgated thereunder. Further, because those actions relate to common stock rather than preferred stock, they name significantly different defendants, and encompass significantly different time periods. (Actions involving claims under Section 10(b) are hereinafter referred to as "the 10(b) Actions").[2]

To Movant's knowledge, there is only one other action brought on behalf of a class involving the Series B Offering wherein only violations of the Securities Act are alleged. That action was filed by, among other counsel, the law firm of Kahn Gauthier Swick LLP ("Kahn Gauthier") on or about April 5, 2007.[3] Kahn Gauthier however, unlike Movant, asserts claims under Section 12(a)(2) of the Securities Act.

Movant's action names as defendants: New Century; the underwriters of the offering, specifically Bear Stearns & Co. ("Bear Stearns"), Morgan Stanley & Co. ("Morgan Stanley"),

---

[1] *The Jay Peter Kaufman Revocable Trust v. New Century Financial Corp. et al.*, (filed on April 10, 2007).

[2] The vast majority of the other actions filed against New Century are brought by those who purchased or sold New Century common stock, and there name a significantly different list of defendants than those named in Movant's action, as well as encompassing different time periods.

[3] Importantly, Kahn Gauthier has also taken the position that its action should not be consolidated with the Section 10(b) Actions.

Stifel Nicolaus & Company, Inc. ("Stifel Nicolaus"), and Jeffries & Company, Inc. ("Jeffries"), (collectively the "Underwriter Defendants"); and various individual directors and/or officers of defendant New Century ("Individual Defendants"). In sharp contrast to this, the Section 10(b) Actions pending in California do not name the Underwriter Defendants--the majority of whom are headquartered or do substantial business here in New York.

Pursuant to the PSLRA, prior to selecting a lead plaintiff, the Court must decide whether to consolidate actions. *See* 15 U.S.C. 78u-4(a)(3)(B)(ii) and 77z-1(a)(3)(B)(ii). The 10(b) Actions and Movant's action should not be consolidated because the standards of pleading and proof are different, and these differences are prejudicial to plaintiffs, such as Movant, who are seeking to assert only claims which do not allege or sound in fraud. Similarly, the Kahn Gauthier action and Movant's action should not be consolidated because the Kahn Gauthier action alleges causes of action under Section 12(a)(2) of the Securities Act, requiring different proof than Movant in order to prevail.

After deciding whether to consolidate actions, the PSLRA directs the Court to appoint as Lead Plaintiff the movant or group of movants that have demonstrated the "largest financial interest in the litigation" and also meet the typicality and adequacy prongs of Fed. R. Civ. P. 23. *See* 15 U.S.C. 78u-4(a)(3)(B)(iii) and 77z-1(a)(3)(B)(iii). As demonstrated herein, Movant has sustained losses totaling approximately $525,000.00 pursuant to the Company's offering of Series B Preferred Stock. *See* Exhibit B to Declaration of Peter Safirstein.[4] To the best of Movant's knowledge, its losses are the largest among purported class members seeking appointment as Lead Plaintiff of a Class representing those who purchased or otherwise acquired

---

[4] An addendum certifying that Mr. Kaufman intended to sign as trustee for Movant is attached as Exhibit D to the Declaration of Peter Safirstein.

New Century's Series B Preferred Stock pursuant to (or traceable to) the August 2006 Offering.[5] Movant is unaware of any other class member that has filed an action or an application for appointment as Lead Plaintiff that sustained greater financial losses pursuant and/or traceable to the Offering. Further, Movant understands the commitments and obligations of a Lead Plaintiff and, for purposes of this Motion, satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure. In addition, Movant has retained competent and experienced counsel to prosecute this action and seeks the Court's approval of its selection of Lead Counsel.

Pursuant to the PSLRA, the Lead Plaintiff selects the Lead Counsel subject to Court approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v) and 15 U.S.C. §77z-1(a)(3)(B)(v). Movant has selected the law firm of Milberg Weiss to serve as Lead Counsel. Milberg Weiss has extensive experience successfully litigating securities class actions and possesses the resources necessary to vigorously pursue this litigation on behalf of the class. Further, on Movant's behalf, Milberg Weiss has already undertaken an investigation into the allegations at issue here. That investigation has encompassed a financial analysis of publicly available information, in-depth study of the sub-prime mortgage industry, and interviews with former high-level employees of New Century. For the reasons summarized herein and discussed more fully below, Movant's motion should be granted.

### III. PROCEDURAL HISTORY

The first of the 10(b) Actions was filed on February 8, 2007, and captioned *Avi Gold v. Brad Morrice et al.* Pursuant to 15 U.S.C. §78u-4(a)(3)(A)(i) and 15 U.S.C. §77z-1(a)(3)(A)(i),

---

[5] The losses suffered by Movant are not the same as its legally compensable damages, the measure of which is often a complex legal question which cannot be determined at this stage of litigation. The approximate losses can, however, be determined based upon reference to information concerning the current market for the Company's securities. Movant's transactions in New Century Series B Preferred Stock are set forth in its certifications, annexed as Exhibit A to the Declaration of Peter Safirstein.

on February 9, 2007, Roy Jacobs & Associates published a notice on Yahoo Finance that it had filed a class action regarding common stock "and other securities" of New Century. *See* Exhibit E to the Declaration of Peter Safirstein. The notice informed the proposed class of their right to move the Court for appointment as Lead Plaintiff no later than April 10, 2007. On March 19, 2007, Berger & Montague P.C. issued a press release stating that it had filed a class action "on behalf of all purchasers of New Century Financial Corporation's...Series B Cumulative Redeemable Preferred Stock ...between August 15, 2006 and February 7, 2007, inclusive." This notice also notified shareholders in the Section 10(b) Actions of the April 10, 2007 deadline to move for Lead Plaintiff status. These press releases provided adequate notice to all purchasers of New Century securities, including the New Century Series B Preferred Offering Purchasers, of the April 10, 2007 deadline. On April 10, 2007, Movant filed a complaint pursuant to Section 11 of the Securities Act of 1933 on behalf of purchasers of New Century Series B Preferred Stock. While Movant does not believe that this action is suitable for consolidation with the California Actions, in an abundance of caution, it is filing these papers, in recognition of the April 10 deadline applicable in those actions.

Movant is filing this motion within the 60-day period following publication of the February 12, 2007, notice pursuant to Section 21D of the PSLRA, and it is proper for Movant to be appointed as Lead Plaintiff of a Class of Series B Preferred Offering Purchasers.

IV.    **STATEMENT OF FACTS**

Defendant New Century is a corporation incorporated under the laws of Maryland and has principal business offices at 18400 Von Karman Avenue, Suite 1000, Irvine, CA. New

5

Century is a REIT[6] focused on the business of "sub-prime lending." Specifically, New Century makes mortgage loans to persons who are generally unable to access credit from traditional financial institutions because they do not satisfy credit, documentation or other underwriting standards mandated by these traditional mortgage lenders and loan buyers, which typically lend only to more creditworthy borrowers. On February 7, 2007, New Century announced that it would be forced to restate its financial results for the year 2006 because they were not prepared in accordance with GAAP. On the news of this impending restatement, the share price of the Company's Series B Preferred stock plunged over 23%, from $24.95 per share on February 7, 2007 to $19.04 several days later on February 12, 2007. By March 14, 2007, the Company's Series B preferred shares traded as low as $6.00 per share, approximately 76% lower than the share price five weeks earlier on February 7. On April 2, 2007, New Century filed a petition under Chapter 11 of the United States Bankruptcy Code.

The Underwriter Defendants underwrote New Century's Series B Preferred Offering. Bear Stearns and Morgan Stanley acted as joint bookrunners, while Stifel Nicolaus and Jeffries acted as co-managers with respect to the Offering.

Plaintiff, the Jay Peter Kaufman Revocable Trust, purchased New Century Series B Preferred Stock, as set forth in the certification attached hereto as Exhibit A to the Declaration of Peter Safirstein, pursuant and/or traceable to the Company's public Offering, and was damaged thereby. Plaintiff brings this action on behalf of a Class of those who purchased or otherwise

---

[6] REIT's are publicly traded companies that typically make investments in and/or manage real estate and pay rental income and profits to shareholders, and/or (in the case of "Mortgage REITs") invest in mortgage loans secured by real estate. These secured mortgage loans are typically either originated or underwritten by the REIT, or purchased by the REIT from a secondary market. The funds invested by REITs typically come from equity capital invested by shareholders or consists of debt borrowed from other lenders.

acquired New Century Series B Preferred stock pursuant and/or traceable to the Offering during the Class Period.

## ARGUMENT

I. **THE SECTION 11 ACTIONS PERTAININING TO SERIES B PREFERRED STOCK SHOULD NOT BE CONSOLIDATED WITH ANY OTHER ACTIONS**

   A. **Section 11 Claims Should Not Be Consolidated With Section 10(B) Claims**

The Private Securities Litigation Reform Act ("PSLRA") provides that a court shall not appoint a lead plaintiff until after the court decides the motion to consolidate. 15 U.S.C. § 78u-4(a)(3)(B)(ii); 15 U.S.C. § 77z-1(a)(3)(B)(ii). Consolidation is sometimes appropriate when there is "a common question of law or fact pending before the Court." Fed. R. Civ. P. 42(a); "The mere existence of common issues, however, does not require consolidation." *In re Datatec Sys., Inc. Sec. Litig.*, 2006 U.S. Dist. LEXIS 78843 (D.N.J. 2006). "Even if such a common question exists…consolidation is inappropriate if it results in inefficiency, inconvenience, or unfair prejudice to a party." *Miller v. Ventro Corp.*, 2001 U.S. Dist. LEXIS 26027 (N.D. Cal. 2001) (citing *EEOC v. HBE Corp.*, 135 F.3d 543, 551 (8th Cir. 1998)). Further, "[t]he party seeking consolidation bears the burden of demonstrating that convenience and judicial economy would result from consolidation." *Id.* quoting *Wright v. United States*, 1993 U.S. Dist. LEXIS 11385, (N.D. Cal. Aug. 6, 1993). "In exercising its discretion, a court should weigh the interests of judicial economy against the potential for new delays, expense, confusion, or prejudice." *Id.* quoting *In re Consol. Parlodel Litig.*, 182 F.R.D. 441, 444 (D.N.J. 1998).

Here, consolidation of the Section 11 claims with the Section 10(b) claims would result in inefficiency, inconvenience, and unfair prejudice to Movant, because of the heightened standards of pleading and proof required under Section 10(b). Specifically, Section 11

"impos[es] a stringent standard of liability on the parties who play a direct role in a registered offering. If a plaintiff purchased a security issued pursuant to a registration statement, he need only show a material misstatement or omission to establish his prima facie case." *Herman & Maclean v. Huddleston*, 459 U.S. 375, 381-382 (U.S. 1983) (footnotes omitted). Here, New Century has restated its financial statements for the entirety of 2006—including the periods covered by the relevant Offering Documents relating to the offering of its Series B Preferred Stock. This in itself is an admission that those financial statements contained material misstatements or omissions. APB No.20, ¶¶7-13; SFAS No. 154, ¶25. Thus, Movant, who has additionally certified to the timely purchase of the securities, has already established a prima facie case under Section 11.

In stark contrast to Section 11, plaintiffs asserting claims arising under Section 10(b) must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2). This pleading requirement has been characterized as a "heavy burden." *McNamara v. Pre-Paid Legal Servs.*, 189 Fed. Appx. 702, 711 (10th Cir. 2006). Indeed, this heightened pleading standard has been interpreted as requiring that plaintiffs "marshal sufficient facts to convince a court at the outset that the defendants likely intended to deceive, manipulate, or defraud." *Makor Issues & Rights, Ltd. v. Tellabs, Inc.*, 437 F.3d 588, 594-595 (7th Cir. 2006) *cert. granted* 127 S. Ct. 853 (2007).

In addition to alleging and ultimately proving scienter on the part of the defendants, plaintiffs under Section 10(b), but not under Section 11, must also show their own reliance on the misstatements at issue. This is generally accomplished via the "fraud on the market" doctrine. *See, e.g., Basic Inc. v. Levinson*, 485 U.S. 224, 241-242 (U.S. 1988). This theory implicates questions regarding the efficiency of the market in which the security was traded, which in turn

often merits the enlistment of expert witnesses and complicated economic and statistical analysis. Indeed, there are "various factors relevant to an efficiency determination, and...abundant evidence that can be developed with respect to each factor." *Bowe v. PolyMedica Corp. (In re PolyMedica Corp. Sec. Litig.)*, 432 F.3d 1, 5 (1st Cir. 2005).

The disparity in standards as between alleging fraud based claims compared with the standards underlying Movant's strict liability claims will inevitably prejudice Movant, who has asserted only Section 11 (and control liability claims pursuant to Section 15) claims if the fraud based and non-fraud based claims are consolidated. For example, a motion to dismiss the Section 10(b) claims will require significantly more briefing than will a motion to dismiss the Section 11 claims, because defenses to the Section 10(b) claims will almost certainly focus on whether the facts pled give rise to a "strong inference" of scienter. This question, which is entirely unrelated to the Section 11 claims, is fact-intensive. Forcing a Movant who alleges only Securities Act violations to wait while the fraud based issues are resolved will only hinder such a Movant's ability to seek redress, and will not benefit either them or the Section 10(b) Plaintiffs.

Additionally, assuming that the Section 10(b) claims survive a motion to dismiss, the discovery requests relating to each claim will be different, again because of the scienter standard. Plaintiffs bringing a Section 11 claim often do not need to engage in lengthy or complicated discovery regarding, for example, which individual knew of which accounting practice at a certain date, how often regional managers may have reported to their superiors, or what information was relayed when they did. Indeed, under Section 11 "[l]iability against the issuer of a security is virtually absolute, even for innocent misstatements." *Herman & Maclean v. Huddleston*, 459 U.S. 375, 382 (U.S. 1983). Thus, there is no need to make plaintiffs asserting Section 11 claims wait while those asserting Section 10(b) claims first engage in battle over

discovery. To do so unduly prejudices Section 11 claimants, both because of the increased attorneys' fees and the extended period of time involved.

Moreover, the issue of reliance, as discussed above, will almost certainly raise the question of market efficiency. This, in turn, may well entail the use of economic experts, and will certainly implicate the need for further discovery, and, ultimately, extensive briefing which will consume still more time and money—all to resolve a question that has nothing to do with Section 11 claims.

In sum, because Section 11 claims require significantly less from plaintiffs in the way of both pleading and proof (and, therefore, discovery), it is unduly prejudicial to Section 11 plaintiffs to have their claims consolidated with claims arising under Section 10(b).

**B.     Section 11 Claims Should Not Be Consolidated With Section 12 Claims**

Like claims arising under Section 10(b) of the Exchange Act, claims arising under Section 12(a)(2) of the Securities Act ("Section 12 claims") should also not be consolidated with the Section 11 claims, because they require separate measures of pleading and proof. The nature of Section 12 claims gives rise to unique issues which do not pertain to Section 11 claims, and which will take extensive factual and legal research to resolve in this instance. Specifically, Section 12 plaintiffs must establish that they purchased a security from particular defendant, because "a buyer cannot recover against his seller's seller." *Pinter v. Dahl*, 486 U.S. 622, 644 (U.S. 1988). This necessarily involves "tracing" each plaintiff's share to the selling underwriter and proving that there were no intermediaries between the plaintiff and the defendant—an arduous and fact-intensive undertaking with no bearing on Section 11 claims.

## II. MOVANT SHOULD BE LEAD PLAINTIFF FOR ALL SECTION 11 CLAIMS PERTAINING TO THE AUGUST 2006 OFFERING OF NEW CENTURY SERIES B PREFERRED STOCK

The PSLRA has established a procedure for the appointment of a lead plaintiff to oversee securities fraud class actions brought under the Securities Act, and pursuant to the FRCP. See 15 U.S.C. § 77z-1(a)(1), (3). That procedure provides that within 90 days after publication of notice to potential class members, the Court shall consider any motion made by a class member and "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." 15 U.S.C. § 77z-1(a)(3)(B)(i). In determining the "most adequate plaintiff," the PSLRA provides that:

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this title is the person or group of persons that –
>
> (aa) has either filed the complaint or made a motion in response to a notice . . .
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 77z-1 (a)(3)(B)(iii); *See generally, Greebel v. FTP Software*, 939 F. Supp. 57, 64 (D. Mass. 1996).

### 1. Movant Satisfies the Lead Plaintiff Requirements of the PSLRA

#### a. Movant Has Complied with the PSLRA and Should Be Appointed Lead Plaintiff

The time period within which class members may move to be appointed lead plaintiff in the California Actions under 15 U.S.C. § 77z-1(a)(3)(A)-(B) expires after April 10, 2007. In an abundance of caution, and within the requisite time frame after publication of the required notice,

Movant has timely moved this Court to be appointed Lead Plaintiff on behalf of all purchasers of Series B Preferred Stock from the August 2006 Offering.

Movant has duly signed and submits herewith a certification stating that it has reviewed the complaint and is willing and able to serve as a representative party on behalf of the Series B Purchasers. *See* Exhibit A to Declaration of Peter Safirstein. Additionally, Movant has selected and retained experienced and competent counsel to represent itself and the proposed class. (*See* Firm Résumé Milberg Weiss, attached as Exhibit C to the Declaration of Peter Safirstein). Additionally, Movant has, through counsel, undertaken an extensive investigation of the facts giving rise to the complaint as outlined therein.

Accordingly, Movant has satisfied the requirements of 15 U.S.C. § 78u-4(a)(3)(A)-(B) and 15 U.S.C. § 77z-1(a)(3)(A)-(B) and is entitled to have its application for appointment as Lead Plaintiff and its selection of Lead Counsel considered and approved by the Court.

### b. Movant Has the Largest Financial Interest in the Relief Sought by the Proposed Class

According to 15 U.S.C. § 77z-1(a)(3)(B)(iii), the court shall appoint as lead plaintiff the class member or members who represent the largest financial interest in the relief sought by the action. As evidenced by the accompanying certifications, Movant purchased New Century Series B Preferred Stock and has suffered estimated losses of $525,000.00 as a result of Defendants' misconduct. (*See* Exhibit B to the Declaration of Peter Safirstein). Movant has a significant financial interest in this case and is unaware of any other applicant or applicant group that has sustained greater financial losses in connection with the purchase of New Century Series B Preferred Stock. Therefore, Movant satisfies all of the PSLRA's prerequisites for appointment as Lead Plaintiff and should be appointed as such pursuant to 15 U.S.C. § 77z-1(a)(3)(B). *See*

*Lax v. First Merchants Acceptance Corp.*, 1997 U.S. Dist. LEXIS 11866, at *3 (members of moving group with the largest collective financial interest are presumptive lead plaintiffs).

### 2. Movant Satisfies Rule 23

According to 15 U.S.C. § 77z-1(a)(3)(B)(iii), in addition to possessing the largest financial interest in the outcome of the litigation, the lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) provides that a party may serve as a class representative if the following four (4) requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

Of the four prerequisites to class certification, only two–typicality and adequacy–directly address the personal characteristics of the class representative. Consequently, in deciding a motion to serve as lead plaintiff, the Court should limit its inquiry to the typicality and adequacy prongs of Rule 23(a), and defer examination of the remaining requirements until the lead plaintiff moves for class certification. *See Fischler v. Amsouth Bancorporation*, No. 96-1567-CIV-T-17A, 1997 U.S. Dist. LEXIS 2875, at **7-8 (M.D. Fla. Feb. 6, 1997); *See also Lax*, 1997 U.S. Dist. LEXIS 11866, at *20. Movant, as described below, satisfies the typicality and adequacy requirements of Rule 23, thereby justifying its appointment as Lead Plaintiff of the Class.

13

### a.     Movant Fulfills the Typicality Requirement

Under Rule 23(a)(3), the claims or defenses of the representative party must be typical of those of the class. Typicality exists if the claims "arise from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 291 (2d Cir. 1992); *Eisenberg v. Gagnon*, 766 F.2d 770, 786 (3d Cir. 1985). The claims of the class representatives need not be identical to the claims of the class to satisfy typicality. Instead, courts have recognized that:

> The typicality requirement may be satisfied even if there are factual distinctions between the claims of the named plaintiffs and those of other class members. Thus, similarity of legal theory may control even in the face of differences of fact.

*De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983) (citations omitted); *see also Halperin v. Nichols, Safina, Lerner & Co.*, No. 94 C 6960, 1996 U.S. Dist. LEXIS 16111, **13-14 (N.D. Ill. October 28, 1996).

Movant seeks to represent a class of purchasers of New Century Series B Preferred Stock which have identical, non-competing and non-conflicting interests. Movant satisfies the typicality requirement because, like all other sub-class members, (1) Movant purchased or otherwise acquired New Century Series B Preferred Stock pursuant and/or traceable to the August 2006 Offering; (2) there existed material misstatements or material omissions in the registration statement and prospectus pertaining to the offering; and (3) Movant suffered damages thereby. Thus, Movant's claims are typical of those of other members of the proposed Class since its claims, and the claims of the other Class members, arise "from the same event or course of conduct giving rise to the claims of other class members." *Penn v. San Juan Hosp., Inc.*, 528 F.2d 1181, 1189 (10th Cir. 1975).

### b. Movant Fulfills the Adequacy Requirement

Under Rule 23(a)(4), the representative party must "fairly and adequately protect the interests of the class." The PSLRA directs the court to limit its inquiry regarding the adequacy of the proposed lead plaintiffs to represent the class to the existence of any conflicts between the interests of the proposed lead plaintiff the members of the class. *Fischler*, 1997 U.S. Dist. LEXIS 2875, at **7-8. The standard for adequacy of representation under Rule 23(a)(4) is met by: (1) the absence of potential conflicts between the named plaintiff and the class members and (2) the class representatives' choice of counsel who is qualified, experienced and able to vigorously conduct the proposed litigation. *See Modell v. Eliot Sav. Bank*, 139 F.R.D. 17, 23 (D. Mass. 1991) (citing *Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 130 (1st Cir. 1985)).

As detailed above, Movant's claims share common questions of law and fact with the members of the purported Class and its claims are typical of the claims of other Class members. Further, Movant has already taken significant steps demonstrating that it recognizes, and will protect, the interests of the Class. Specifically, Movant has: (1) executed a certification detailing its Class Period transactions and expressing its willingness to serve as a Class representative; (2) moved this Court for appointment as Lead Plaintiff for the Class; and (3) retained competent and experienced counsel who, as shown below, will be able to conduct this complex litigation vigorously and in a professional manner. *See generally, Lax*, 1997 U.S. Dist. LEXIS 11866, at 21-25. Moreover, Movant has the largest known financial interest such that its "financial stake in the litigation provides an adequate incentive for [it] to vigorously prosecute the action." *In re Milestone Scientific Sec. Litig.*, 183 F.R.D. 404, 416 (D.N.J. 1998).

In addition, appointing the Jay Peter Kaufman Revocable Trust as Lead Plaintiff will ensure that the interests of purchasers of Series B Preferred Stock will be protected. As the court stated in *In re Oxford Health Plans Inc., Sec. Litig.*:

15

## IV.   CONCLUSION

For the foregoing reasons, Movant respectfully requests that the Court appoint Movant as Lead Plaintiff for the Class and approve Movant's selection of Milberg Weiss as Class Lead Counsel.

DATED: April 10, 2007                                                Respectfully submitted,

/s/

MILBERG WEISS & BERSHAD LLP
Peter G.A. Safirstein (PJ-6176)
Kent A. Bronson
Roland W. Riggs
One Pennsylvania Plaza
New York, NY  10119-0165
Telephone: (212) 594-5300
Facsimile: (212) 868-1229

*Attorneys for Plaintiff and the Class*

17