*statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;*

3.    Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report;

4.    The registrant's other certifying officers and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) and internal control over financial reporting (as defined in Exchange Act Rules 13a-15(f) and 15d-15(f)) for the registrant and have:

a)    *Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;*

b)    Designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles;

c)    *Evaluated the effectiveness of the registrant's disclosure*

30

1    *controls and procedures and presented in this report our*
2    *conclusions about the effectiveness of the disclosure controls*
3    *and procedures, as of the end of the period covered by this*
4    *report based on such evaluation*; and

5    d)    Disclosed in this report any change in the registrant's
6    internal control over financial reporting that occurred during the
7    registrant's most recent fiscal quarter (the registrant's fourth
8    fiscal quarter in the case of an annual report) that has materially
9    affected, or is reasonably likely to materially affect, the
10    registrant's internal control over financial reporting; and

11    5.    The registrant's other certifying officers and I have disclosed,
12    based on our most recent evaluation of internal control over financial
13    reporting, to the registrant's auditors and the audit committee of the
14    registrant's board of directors (or persons performing the equivalent
15    functions):

16    a)    *All significant deficiencies and material weaknesses in the*
17    *design or operation of internal control over financial reporting*
18    *which are reasonably likely to adversely affect the registrant's*
19    *ability to record, process, summarize and report financial*
20    *information*; and

21    b)    Any fraud, whether or not material, that involves
22    management or other employees who have a significant role in
23    the registrant's internal control over financial reporting.

24    /s/   ROBERT K. COLE
25    Robert K. Cole
26    Chairman and Chief Executive Officer
27    Date: March 16, 2005
28                                        *  *  *

31

1    /s/   EDWARD F. GOTSCHALL

2    _____

3    Edward F. Gotschall

4    Vice Chairman – Finance

5    Date: March 16, 2005

6                              * * *

7    /s/   BRAD A. MORRICE

8

9    Brad A. Morrice

10    **Vice Chairman, President and**

11    Chief Operating Officer

12    Date: March 16, 2005

13                              * * *

14    /s/   PATTI M. DODGE

15

16    Patti M. Dodge

17    Executive Vice President,

18    Chief Financial Officer and Controller

19    Date: March 16, 2005

20    EXHIBIT 32.1

21

22              **CERTIFICATION PURSUANT TO**

23    **18 U.S.C. SECTION 1350, AS ADOPTED PURSUANT TO**

24                    **SECTION 906 OF THE**

25            **SARBANES-OXLEY ACT OF 2002**

26    In connection with the Annual Report of New Century Financial

27    Corporation (the "Company") on Form 10-K for the period ending

28    December 31, 2004 as filed with the Securities and Exchange

                              32

Commission on the date hereof (the "Report"), I, **Robert K. Cole**, Chairman and Chief Executive Officer of the Company, certify, pursuant to 18 U.S.C. § 1350, as adopted pursuant to § 906 of the Sarbanes-Oxley Act of 2002, that, to my knowledge:

(1)    The Report fully complies with the requirements of section 13(a) or 15(d) of the Securities Exchange Act of 1934; and

(2)    *The information contained in the Report fairly presents, in all material respects, the financial condition and results of operations of the Company.*

/s/    ROBERT K. COLE

_____

Robert K. Cole

Chairman and Chief Executive Officer

March 16, 2005

EXHIBIT 32.2

## CERTIFICATION PURSUANT TO
## 18 U.S.C. SECTION 1350, AS ADOPTED PURSUANT TO
## SECTION 906 OF THE
## SARBANES-OXLEY ACT OF 2002

In connection with the Annual Report of New Century Financial Corporation (the "Company") on Form 10-K for the period ending December 31, 2004 as filed with the Securities and Exchange Commission on the date hereof (the "Report"), I, **Edward F. Gotschall**, Vice Chairman – Finance of the Company, certify, pursuant

33

1    to 18 U.S.C. § 1350, as adopted pursuant to § 906 of the Sarbanes-
2    Oxley Act of 2002, that, to my knowledge:

3        (1)   The Report fully complies with the requirements of
4        section 13(a) or 15(d) of the Securities Exchange Act of 1934;
5        and

6        (2)   *The information contained in the Report fairly presents,*
7        *in all material respects, the financial condition and results of*
8        *operations of the Company.*

9    / S /   EDWARD F. GOTSCHALL

10   Edward F. Gotschall

11   Vice Chairman – Finance

12   March 16, 2005

13

14   EXHIBIT 32.3

15

16   **CERTIFICATION PURSUANT TO**

17   **18 U.S.C. SECTION 1350, AS ADOPTED PURSUANT TO**

18   **SECTION 906 OF THE**

19   **SARBANES-OXLEY ACT OF 2002**

20   In connection with the Annual Report of New Century Financial
21   Corporation (the "Company") on Form 10-K for the period ending
22   December 31, 2004 as filed with the Securities and Exchange
23   Commission on the date hereof (the "Report"), I, **Brad A. Morrice**,
24   Vice Chairman, President and Chief Operating Officer of the Company,
25   certify, pursuant to 18 U.S.C. § 1350, as adopted pursuant to § 906 of
26   the Sarbanes-Oxley Act of 2002, that, to my knowledge:

27       (1)   The Report fully complies with the requirements of
28       section 13(a) or 15(d) of the Securities Exchange Act of 1934;

34

and

(2)    *The information contained in the Report fairly presents, in all material respects, the financial condition and results of operations of the Company.*

/ S /    BRAD A. MORRICE

_____

Brad A. Morrice

Vice Chairman, President and Chief Operating Officer

March 16, 2005

EXHIBIT 32.4

## CERTIFICATION PURSUANT TO
## 18 U.S.C. SECTION 1350, AS ADOPTED PURSUANT TO
## SECTION 906 OF THE
## SARBANES-OXLEY ACT OF 2002

In connection with the Annual Report of New Century Financial Corporation (the "Company") on Form 10-K for the period ending December 31, 2004 as filed with the Securities and Exchange Commission on the date hereof (the "Report"), I, *Patti M. Dodge*, Executive Vice President, Chief Financial Officer and Controller of the Company, certify, pursuant to 18 U.S.C. § 1350, as adopted pursuant to § 906 of the Sarbanes-Oxley Act of 2002, that, to my knowledge:

(1)    The Report fully complies with the requirements of section 13(a) or 15(d) of the Securities Exchange Act of 1934; and

(2)    *The information contained in the Report fairly presents, in all material respects, the financial condition and results of*

35

1          *operations of the Company.*

2

3          / S /   PATTI M. DODGE

4          _____

5          Patti M. Dodge

6          Executive Vice President,

7          Chief Financial Officer and Controller

8          March 16, 2005

9          54.    As investors also ultimately learned following the end of the relevant

10    period, the statements contained in and/or incorporated by reference into New

11    Century's Proxy-Prospectus, issued in connection with the Company's June 2005

12    Series A Preferred Share Offering, referenced above, were each materially false and

13    misleading, for the following reasons, among others:

14               (a)    At the time of the Series A Preferred Share Offering, it was not

15    true that the Company maintained necessary and proper internal financial controls

16    and operational procedures so as to assure that New Century's financial results were

17    true, accurate or reliable, or reported in conformity with Generally Accepted

18    Accounting Principles. In fact, at that time, the Company's reported results were not

19    true and accurate and they did not contain all necessary adjustments or reflect the

20    true financial or operational condition of New Century at that time;

21               (b)    As a result of the Company's lack of internal operational

22    procedures and financial controls, and as a result of Defendants' failure to properly

23    account for its allowances for loan losses and/or loan repurchases, at the time of the

24    Series A Preferred Share Offering in June 2005 New Century's financial results

25    were not true or accurate and they were not prepared in conformity with GAAP or

26    SEC accounting rules – such that Defendants would ultimately be forced to restate

27    the Company's financial and operational condition for the first three quarters of

28    2006;

                                        36

1          (c)    At the time of the Series A Preferred Share Offering, Defendants

2 had presented a financial statement and balance sheet that had each materially

3 overstated the Company's profitability by under-reporting reserves, by over-

4 reporting New Century's asset values, and by failing to make proper, timely

5 adjustments to the Company's operational and financial reports; and

6          (d)    As a result of the aforementioned adverse conditions that

7 Defendants failed to disclose, at the time of the Series A Preferred Share Offering,

8 Defendants lacked any reasonable basis to claim that the Company was operating

9 according to plan, or that New Century could achieve guidance sponsored and/or

10 endorsed by Defendants.

### August 2006 Series B Preferred Share Offering

12    55.    On or about August 16, 2006, New Century initiated its Public

13 Offering of 2.0 million shares of Series B Preferred shares priced at $25.00 each. In

14 addition, Underwriters also received an option to purchase up to an additional

15 300,000 Series B Preferred shares to cover over-allotments. Thereafter, New

16 Century Series B Preferred shares were listed and began trading on the NYSE.

17    56.    The New Century Series B Preferred Share Offering was made

18 through an underwriting syndicate led by Bear, Stearns & Co. Inc. and Morgan

19 Stanley, acting as the "co-book running lead managers" for the Offering, and with

20 Stifel Nicolaus and Jefferies & Co. acting as "co-managers" for the Offering. In

21 connection with the Series B Preferred Share Offering, Underwriters received

22 proceeds of at least $1.8 million. Gross proceeds from the sale of all Series B

23 Preferred shares sold in the August 2006 Offering, including the Underwriters over-

24 subscription option, were at least $57.5 million.

25    57.    In connection with the Series B Preferred Share Offering, on or about

26 August 16, 2006, Defendants also filed with the SEC, pursuant to Form 424B5, a

27 copy of the final, amended joint Proxy-Prospectus. In addition to describing the

28 terms and conditions of this Preferred Share Offering itself, the Series B Preferred

1  Share Proxy-Prospectus contained statements that distinguished these shares from
2  shares of the Company's Common stock.  In this regard, the Series B Preferred
3  Share Offering Prospectus stated, in part, the following:

4  **Liquidation Preference**

5  If we liquidate, dissolve or wind up, holders of our Series B Preferred
6  Stock will have the right to receive the sum of (a) a liquidation
7  preference of $25.00 per share, (b) the applicable premium per share
8  (expressed in dollar amount) as set forth in the table on page S-15 of
9  this prospectus supplement and (c) an amount equal to all accumulated,
10  accrued and unpaid dividends (whether or not earned or declared), if
11  any, to and including the date fixed for payment, without interest,
12  *before any payments are made to the holders of our common stock or to*
13  *the holders of equity securities the terms of which provide that such*
14  *equity securities will rank junior to our Series B Preferred Stock.*  The
15  rights of the holders of our Series B Preferred Stock to receive their
16  liquidation distribution will be subject to the proportionate rights of any
17  other series or class of our capital stock ranking on a parity with our
18  Series B Preferred Stock as to liquidation, such as our 9.125% Series A
19  Cumulative Redeemable Preferred Stock, par value $0.01 per share,
20  referred to herein as our Series A Preferred Stock.

21
22  **Limited Voting Rights**

23  *Holders of our Series B Preferred Stock generally have no voting*
24  *rights.  However, if we are in arrears on dividends on our Series B*
25  *Preferred Stock for six or more quarterly periods, whether or not*
26  *consecutive, holders of our Series B Preferred Stock* (voting separately
27  as a class with all other classes or series of our equity securities upon
28  which like voting rights have been conferred and are exercisable and

38

1     that rank in parity with our Series B Preferred Stock with respect to

2     dividend rights, such as our Series A Preferred Stock) *will be entitled to*

3     *vote to elect two additional directors to serve on our board of directors,*

4     *until all dividends accumulated for all past dividend periods with*

5     *respect to our Series B Preferred Stock have been paid or declared and*

6     *a sum sufficient for the payment of such dividends set aside for*

7     *payment.* In addition, we will not be permitted under the terms of our

8     Series B Preferred Stock to create a class or series of capital stock

9     ranking senior to our Series B Preferred Stock, and we may not make

10     certain material adverse changes to the terms of our Series B Preferred

11     Stock, in each case without the affirmative vote or consent of the

12     holders of at least two-thirds of the outstanding shares of our Series B

13     Preferred Stock.

14        58.    The August 2006 Series B Preferred Share Proxy-Prospectus also

15 incorporated by reference several of the Company's SEC filings, including but not

16 limited to New Century's 2005 Annual Report, filed pursuant to Form 10-K on or

17 about March 15, 2006, and interim reports filed for the first and second quarters of

18 2006. In addition to reiterating many of the same or similar statements concerning

19 the Company and its operations as had been made in the August 2006 joint Offering

20 Proxy-Prospectus, the 2005 Form 10-K also represented to investors that the

21 Company's financial statements and disclosures were made in accordance with

22 Generally Accepted Accounting Principles and that the Company's consolidated

23 financial statements contained all necessary adjustments. In this regard, the 2005

24 Form 10-K stated, in part, the following:

25     NEW CENTURY FINANCIAL CORPORATION AND SUBSIDIARIES

26        MANAGEMENT'S REPORT ON INTERNAL CONTROL OVER

27                  FINANCIAL REPORTING

28     Our management is responsible for establishing and maintaining

39

1    effective internal control over financial reporting as defined in Rules
2    13a-15(f) under the Securities Exchange Act of 1934. *Our internal*
3    *control over financial reporting is designed to provide reasonable*
4    *assurance to our management and board of directors regarding the*
5    *preparation and fair presentation of published financial statements in*
6    *accordance with generally accepted accounting principles.*

7                              * * *

8    Our management assessed the effectiveness of our internal control over
9    financial reporting as of December 31, 2005.    In making this
10   assessment, our management used the criteria set forth by the
11   Committee of Sponsoring Organizations of the Treadway Commission
12   (COSO) in Internal Control -- Integrated Framework . . . .  The total
13   fiscal year 2005 revenue of the recently acquired mortgage origination
14   platform was approximately $59.6 million and total assets as of
15   December 31, 2005 were $1.2 billion. *Based on our assessment, we*
16   *believe that, as of December 31, 2005, our internal control over*
17   *financial reporting is effective based on those criteria.*

18        59.    In addition to the general statements concerning the propriety of the
19   Company's purported internal adjustments and GAAP compliance, the 2005 Form
20   10-K incorporated by reference into the August 2006 Series B Preferred Share
21   Offering Proxy-Prospectus, also contained specific representations regarding New
22   Century's significant accounting policies - - including its accounting for loan loss
23   and loss reserves -- as follows:

24        *Allowance for Losses on Mortgage Loans Held for Investment*
25        For our mortgage loans held for investment, we establish an allowance
26        for loan losses based on our estimate of losses inherent and probable as
27        of the balance sheet date. *We charge off uncollectible loans at the time*
28        *of liquidation.    We evaluate the adequacy of this allowance each*

                              40

1  *quarter, giving consideration to factors such as the current*
2  *performance of the loans, credit characteristics of the portfolio, the*
3  *value of the underlying collateral and the general economic*
4  *environment.* In order to estimate an appropriate allowance for losses
5  on loans held for investment, we estimate losses using "static pooling,"
6  which stratifies the loans held for investment into separately identified
7  vintage pools. Using historic experience and taking into consideration
8  the factors above, we estimate an allowance for credit losses, which we
9  believe is adequate for known and inherent losses in the portfolio of
10 mortgage loans held for investment. We charge the loss provision to
11 our consolidated statement of income. *We charge losses incurred on*
12 *mortgage loans held for investment to the allowance.*
13
14 The allowance for losses on mortgage loans held for investment as a
15 percentage of mortgage loans held for investment as of December 31,
16 2005 was approximately 1.22% of the unpaid principal balance of the
17 loans compared to 0.73% for the same period in the prior year.
18                                  * * *
19 **Provision for losses on mortgage loans held for investment**
20 *We establish an allowance for loan losses based on our estimate of*
21 *losses inherent and probable in our portfolio as of our balance sheet*
22 *date.* The allowance for losses on mortgage loans held for investment
23 increased to $198.1 million as of December 31, 2005 from $90.2
24 million as of December 31, 2004, due to the increase in portfolio of
25 mortgage loans held for investment, portfolio seasoning and the related
26 provision for loan losses of $140.2 million for the year ended
27 December 31, 2005. The provision for loan losses for the same period
28 in 2004 was $70.3 million. Mortgage loans held for investment grew

41

1    from $13.2 billion at December 31, 2004 to $16.1 billion at
2    December 31, 2005.

3    The following table presents a summary of the activity for the
4    allowance for losses on mortgage loans held for investment for the
5    years ended December 31 (dollars in thousands):

|                      | 2005      | 2004    |
|----------------------|-----------|---------|
| Beginning balance    | $  90,227 | 26,251  |
| Additions            | 140,233   | 70,250  |
| Charge-offs, net     | (32,329)  | (6,274) |
|                      | $ 198,131 | 90,227  |

11   60.    As further evidence of the purported controls and procedures in place
12   at the time of the 2005 Form 10-K, incorporated by reference into the August 2006
13   Series B Preferred Share Offering, the Proxy-Prospectus also stated, in part, the
14   following:

15   Item 9A.    Controls and Procedures

16   (a)    Evaluation of Disclosure Controls and Procedures

17   *As of December 31, 2005, the end of our fourth quarter, our*
18   *management, including our Chief Executive Officer, Vice Chairman-*
19   *Finance, Chief Financial Officer, and President and Chief Operating*
20   *Officer, has evaluated the effectiveness of our disclosure controls and*
21   *procedures*, as such term is defined in Rule 13a-15(e) promulgated
22   under the Securities Exchange Act of 1934. Based on that evaluation,
23   our Chief Executive Officer, Vice Chairman-Finance, Chief Financial
24   Officer and President and Chief Operating Officer concluded, as of
25   December 31, 2005, that *our disclosure controls and procedures were*
26   *effective to ensure that information required to be disclosed by us in*
27   *reports that we file or submit under the Securities Exchange Act of*
28   *1934 is recorded, processed, summarized and reported within the time*

42

1    periods specified in the Securities and Exchange Commission rules and
2    forms.
3
4    (b)  Management's Report on Internal Control over Financial Reporting
5
6    *Our management is responsible for establishing and maintaining*
7    *effective internal control over financial reporting as defined in Rules*
8    *13a-15(f)* under the Securities Exchange Act of 1934. Our internal
9    control over financial reporting is designed to provide reasonable
10   assurance to our management and board of directors regarding the
11   preparation and fair presentation of published financial statements, in
12   accordance with generally accepted accounting principles.
13                                    * * *
14   *Our management assessed the effectiveness of our internal control over*
15   *financial reporting as of December 31, 2005.* In making this
16   assessment, our management used the criteria set forth by the
17   Committee of Sponsoring Organizations of the Treadway Commission
18   (COSO) in Internal Control – Integrated Framework. Not included in
19   this evaluation of our internal control over financial reporting was an
20   evaluation of the mortgage origination platform that Home123
21   Corporation, our indirect wholly owned subsidiary, acquired from RBC
22   Mortgage Company in September 2005. The total fiscal year 2005
23   revenue of the recently acquired mortgage origination platform was
24   approximately $59.6 million and total assets as of December 31, 2005
25   were $1.2 billion. *Based on our assessment, management has*
26   *concluded that, as of December 31, 2005, our internal control over*
27   *financial reporting is effective based on those criteria.*
28

1  Our management's assessment of the effectiveness of internal control
2  over financial reporting as of December 31, 2005, has been audited by
3  KPMG LLP, the independent registered public accounting firm who
4  also audited our consolidated financial statements. KPMG's report on
5  management's assessment of our internal control over financial
6  reporting appears on page F-3 hereof.

7

8  (c)    Changes in Internal Control Over Financial Reporting

9

10  *There have not been any changes in our internal control over financial*
11  *reporting* (as such term is defined in Rules 13a-15(f) and 15d-15(f)
12  under the Exchange Act) during the quarter to which this report relates
13  that have materially affected, or are likely to materially affect, our
14  internal control over financial reporting.

15

16  **Audit Committee**
17  We have a separately designated standing Audit Committee established
18  in accordance with Section 3(a)(58)(A) of the Exchange Act. The
19  members of our Audit Committee are Ms. Marilyn Alexander and
20  Messrs. Donald E. Lange, Michael M. Sachs and Richard A. Zona. Mr.
21  Sachs is the Chairman of our Audit Committee.

22      61.    The 2005 Form 10-K, incorporated by reference into the Company's
23  August 2006 Series B Preferred Share Offering Prospectus, also contained
24  Certifications by Defendants Cole, Gotschall, Morrice and Dodge that attested to the
25  purported accuracy and completeness of the Company's financial and operational
26  reports, as follows:

27          1.      I have reviewed this annual report on Form 10-K of New
28  Century Financial Corporation;

44

2.      *Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;*

3.      *Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report;*

4.      The registrant's other certifying officers and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) and internal control over financial reporting (as defined in Exchange Act Rules 13a-15(f) and 15d-15(f)) for the registrant and have:

a)      Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;

b)      *Designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in*

45

1   *accordance with generally accepted accounting principles*;

2

3   c)   *Evaluated the effectiveness of the registrant's disclosure*

4   *controls and procedures and presented in this report our*

5   *conclusions about the effectiveness of the disclosure controls*

6   *and procedures, as of the end of the period covered by this*

7   *report based on such evaluation*; and

8

9   d)   Disclosed in this report any change in the registrant's

10   internal control over financial reporting that occurred during the

11   registrant's most recent fiscal quarter (the registrant's fourth

12   fiscal quarter in the case of an annual report) that has materially

13   affected, or is reasonably likely to materially affect, the

14   registrant's internal control over financial reporting; and

15

16   5.   The registrant's other certifying officers and I have

17   disclosed, based on our most recent evaluation of internal control over

18   financial reporting, to the registrant's auditors and the audit committee

19   of the registrant's board of directors (or persons performing the

20   equivalent functions):

21

22   a)   *All significant deficiencies and material*

23   *weaknesses in the design or operation of internal control over*

24   *financial reporting which are reasonably likely to adversely*

25   *affect the registrant's ability to record, process, summarize and*

26   *report financial information*; and

27

28   b)   Any fraud, whether or not material, that involves

46

1    management or other employees who have a significant role in

2    the registrant's internal control over financial reporting.

3

4    Date: March 16, 2006

5    /s/ **ROBERT K. COLE**

6    Robert K. Cole

7    Chairman and Chief Executive Officer

8                              * * *

9    /s/    **EDWARD F. GOTSCHALL**

10   _____

11   Edward F. Gotschall

12   Vice Chairman – Finance

13   Date: March 16, 2006

14                              * * *

15   /s/    **BRAD A. MORRICE**

16   _____

17   Brad A. Morrice

18   Vice Chairman, President and

19   Chief Operating Officer

20   Date: March 16, 2006

21                              * * *

22   /s/    **PATTI M. DODGE**

23   _____

24   Patti M. Dodge

25   Executive Vice President,

26   Chief Financial Officer and Controller

27   Date: March 16, 2006

28

CERTIFICATION PURSUANT TO

18 U.S.C. SECTION 1350, AS ADOPTED PURSUANT TO

SECTION 906 OF THE

SARBANES-OXLEY ACT OF 2002

In connection with the Annual Report of New Century Financial Corporation (the "Company") on Form 10-K for the period ending December 31, 2005 as filed with the Securities and Exchange Commission on the date hereof (the "Report"), I, **Robert K. Cole**, Chairman and Chief Executive Officer of the Company, certify, pursuant to 18 U.S.C. § 1350, as adopted pursuant to § 906 of the Sarbanes-Oxley Act of 2002, that, to my knowledge:

(1)     The Report fully complies with the requirements of section 13(a) or 15(d) of the Securities Exchange Act of 1934; and

(2)     *The information contained in the Report fairly presents, in all material respects, the financial condition and results of operations of the Company.*

/s/   ROBERT K. COLE

_____

Robert K. Cole

Chairman and Chief Executive Officer

Date: March 16, 2005

EXHIBIT 32.2

CERTIFICATION PURSUANT TO

18 U.S.C. SECTION 1350, AS ADOPTED PURSUANT TO

SECTION 906 OF THE

SARBANES-OXLEY ACT OF 2002

In connection with the Annual Report of New Century Financial

48

Corporation (the "Company") on Form 10-K for the period ending December 31, 2005 as filed with the Securities and Exchange Commission on the date hereof (the "Report"), I, **Edward F. Gotschall**, Vice Chairman – Finance of the Company, certify, pursuant to 18 U.S.C. § 1350, as adopted pursuant to § 906 of the Sarbanes-Oxley Act of 2002, that, to my knowledge:

(1)    The Report fully complies with the requirements of section 13(a) or 15(d) of the Securities Exchange Act of 1934; and

(2)    *The information contained in the Report fairly presents, in all material respects, the financial condition and results of operations of the Company.*

/s/ EDWARD F. GOTSCHALL
Edward F. Gotschall
Vice Chairman – Finance
March 16, 2006

**EXHIBIT 32.3**

## CERTIFICATION PURSUANT TO
## 18 U.S.C. SECTION 1350, AS ADOPTED PURSUANT TO
## SECTION 906 OF THE
## SARBANES-OXLEY ACT OF 2002

In connection with the Annual Report of New Century Financial Corporation (the "Company") on Form 10-K for the period ending December 31, 2005 as filed with the Securities and Exchange Commission on the date hereof (the "Report"), I, **Brad A. Morrice**, Vice Chairman, President and Chief Operating Officer of the Company, certify, pursuant to 18 U.S.C. § 1350, as adopted pursuant

49

1    to § 906 of the Sarbanes-Oxley Act of 2002, that, to my knowledge:

2

3    (1)    The Report fully complies with the requirements of section

4           13(a) or 15(d) of the Securities Exchange Act of 1934; and

5

6    (2)    *The information contained in the Report fairly presents, in all*

7           *material respects, the financial condition and results of*

8           *operations of the Company.*

9                         **/s/ BRAD A. MORRICE**

10

11                        Brad A. Morrice
                          Vice Chairman, President and
12                        Chief Operating Officer

13                        March 16, 2006

14                                            **EXHIBIT 32.4**

15                  **CERTIFICATION PURSUANT TO**

16        **18 U.S.C. SECTION 1350, AS ADOPTED PURSUANT TO**

17                     **SECTION 906 OF THE**

18                  **SARBANES-OXLEY ACT OF 2002**

19    In connection with the Annual Report of New Century Financial

20    Corporation (the "Company") on Form 10-K for the period ending

21    December 31, 2005 as filed with the Securities and Exchange

22    Commission on the date hereof (the "Report"), I, **Patti M. Dodge**,

23    Executive Vice President and Chief Financial Officer of the Company,

24    certify, pursuant to 18 U.S.C. § 1350, as adopted pursuant to § 906 of

25    the Sarbanes-Oxley Act of 2002, that, to my knowledge:

26    (1)    The Report fully complies with the requirements of section

27           13(a) or 15(d) of the Securities Exchange Act of 1934; and

28

                              50

(2)    *The information contained in the Report fairly presents, in all material respects, the financial condition and results of operations of the Company.*

/s/ **PATTI M. DODGE**

Patti M. Dodge
Executive Vice President
and Chief Financial Officer
March 16, 2006

62.    In addition to reiterating many of the same or similar statements concerning the Company and its operations as had been made in the Series B Preferred Share joint Offering Proxy-Prospectus, the first quarter 2006 Form 10-Q filed with the SEC on May 10, 2006, also represented to investors that the Company's financial statements and disclosures were made in accordance with Generally Accepted Accounting Principles, and that the Company's consolidated financial statements contained all necessary adjustments. In this regard, the 1Q:06 Form 10-Q stated, in part, the following:

The accompanying condensed consolidated financial statements include the consolidated financial statements of New Century's wholly-owned subsidiaries, New Century TRS, New Century Credit, and NCRIV. All material intercompany balances and transactions are eliminated in consolidation.

*The Company has prepared the accompanying unaudited condensed consolidated financial statements in accordance with accounting principles generally accepted in the United States of America for interim financial information and with the instructions to Form 10-Q and Rule 10-01 of Regulation S-X.* Accordingly, the statements do not

51

1    include all of the information and footnotes required by generally

2    accepted accounting principles for complete financial statements. *In*

3    *the opinion of management, all adjustments (consisting of normal*

4    *recurring accruals) considered necessary for a fair presentation have*

5    *been included* . . . .

6    63.    In addition to the general statements concerning the propriety of the

7    Company's purported internal adjustments and GAAP compliance, the 1Q:05 Form

8    10-Q, incorporated by reference into the August 2006 Series B Preferred Share

9    Offering Proxy-Prospectus, also contained specific representations regarding New

10    Century's significant accounting policies – including its accounting for loan loss and

11    loss reserves – as follows:

12    *Allowance for Losses on Mortgage Loans Held for Investment*

13    In connection with its mortgage loans held for investment, the

14    Company establishes an allowance for loan losses based on its estimate

15    of losses inherent and probable as of the balance sheet date. The

16    Company charges off uncollectible loans at the time of liquidation. *The*

17    *Company evaluates the adequacy of this allowance each quarter,*

18    *giving consideration to factors such as the current performance of the*

19    *loans, characteristics of the portfolio, the value of the underlying*

20    *collateral and the general economic environment.* In order to estimate

21    an appropriate allowance for losses for loans held for investment, the

22    Company estimates losses using "static pooling," which stratifies the

23    loans held for investment into separately identified vintage pools.

24    *Provision for losses is charged to the Company's consolidated*

25    *statement of income. Losses incurred are charged to the allowance.*

26    *Management considers the current allowance to be adequate.*

27                                        * * *

28    The allowance for losses on mortgage loans held for investment as a

52

1    percentage of total mortgage loans held for investment as of March 31,
2    2006 was approximately 1.30% of the unpaid principal balance of the
3    loans compared to 1.22% as of December 31, 2005.

4    64.    As further evidence of the purported controls and procedures in place
5    at the time of the August 2006 Series B Offering, the 1Q:06 Form 10-Q,
6    incorporated by reference into the August 2006 Series B Preferred Share Offering
7    Proxy-Prospectus, also stated, in part, the following:

8    **Item 4. *Controls and Procedures***

9

10    *As of March 31, 2006, the end of our first quarter, our management,*
11    *including our Chief Executive Officer, Chief Financial Officer and*
12    *President and Chief Operating Officer, has evaluated the effectiveness*
13    *of our disclosure controls and procedures, as such term is defined in*
14    *Rule 13a-15(e)* promulgated under the Securities Exchange Act of
15    1934, as amended. Based on that evaluation, our Chief Executive
16    Officer, Chief Financial Officer and President and Chief Operating
17    Officer concluded, as of March 31, 2006, that our disclosure controls
18    and procedures were effective to ensure that information required to be
19    disclosed by us in reports that we file or submit under the Securities
20    Exchange Act of 1934 is recorded, processed, summarized and reported
21    within the time periods specified in Securities and Exchange
22    Commission rules and forms. *There was no change in our internal*
23    *control over financial reporting during the quarter ended March 31,*
24    *2006 that materially affected, or is reasonably likely to materially*
25    *affect, our internal control over financial reporting.*

26    65.    The 1Q:06 Form 10-Q, incorporated by reference into the Company's
27    August 2006 Series B Preferred Share Offering Prospectus, also contained
28    Certifications by Defendants Cole, Morrice and Dodge that again attested to the

53

1    purported accuracy and completeness of the Company's financial and operational
2    reports, as follows:

3    **CERTIFICATION PURSUANT TO**
4    **18 U.S.C. SECTION 1350, AS ADOPTED PURSUANT TO**
5    **SECTION 906 OF THE**
6    **SARBANES-OXLEY ACT OF 2002**

7

8    In connection with the Quarterly Report of New Century Financial
9    Corporation (the "Company") on Form 10-Q for the period ending
10   March 31, 2006 as filed with the Securities and Exchange Commission
11   on the date hereof (the "Report"), I, **Robert K. Cole**, Chairman and
12   Chief Executive Officer of the Company, certify, pursuant to 18
13   U.S.C. § 1350, as adopted pursuant to § 906 of the Sarbanes-Oxley
14   Act of 2006, that, to my knowledge:

15

16   (1)    The Report fully complies with the requirements of section
17          13(a) or 15(d) of the Securities Exchange Act of 1934; and
18   (2)    *The information contained in the Report fairly presents, in all*
19          *material respects, the financial condition and results of*
20          *operations of the Company.*

21

22   **/s/ ROBERT K. COLE**
23          Robert K. Cole
24          Chairman and Chief Executive
             Officer
25          May 10, 2006

26

27

28                                                          **Exhibit 32.2**

54

# CERTIFICATION PURSUANT TO
## 18 U.S.C. SECTION 1350, AS ADOPTED PURSUANT TO
## SECTION 906 OF THE
## SARBANES-OXLEY ACT OF 2002

In connection with the Quarterly Report of New Century Financial Corporation (the "Company") on Form 10-Q for the period ending March 31, 2006 as filed with the Securities and Exchange Commission on the date hereof (the "Report"), I, **Brad A. Morrice**, Vice Chairman, President and Chief Operating Officer of the Company, certify, pursuant to 18 U.S.C. § 1350, as adopted pursuant to § 906 of the Sarbanes-Oxley Act of 2002, that, to my knowledge:

(1)    The Report fully complies with the requirements of section 13(a) or 15(d) of the Securities Exchange Act of 1934; and

(2)    *The information contained in the Report fairly presents, in all material respects, the financial condition and results of operations of the Company.*

/s/ **BRAD A. MORRICE**

Brad A. Morrice
Vice Chairman, President and
Chief Operating Officer
May 10, 2006

Exhibit 32.3

## CERTIFICATION PURSUANT TO
## 18 U.S.C. SECTION 1350, AS ADOPTED PURSUANT TO
## SECTION 906 OF THE
## SARBANES-OXLEY ACT OF 2002

In connection with the Quarterly Report of New Century Financial Corporation (the "Company") on Form 10-Q for the period ending March 31, 2006 as filed with the Securities and Exchange Commission on the date hereof (the "Report"), I, **Patti M. Dodge**, Executive Vice President and Chief Financial Officer of the Company, certify, pursuant to 18 U.S.C. § 1350, as adopted pursuant to § 906 of the Sarbanes-Oxley Act of 2002, that, to my knowledge:

(1) The Report fully complies with the requirements of section 13(a) or 15(d) of the Securities Exchange Act of 1934; and

(2) *The information contained in the Report fairly presents, in all material respects, the financial condition and results of operations of the Company.*

/s/ **PATTI M. DODGE**
_____

Patti M. Dodge
Executive Vice President and Chief Financial Officer
May 10, 2006

66.    In addition to reiterating many of the same or similar statements concerning the Company and its operations as had been made in the Series B Preferred Share joint Offering Proxy-Prospectus, the second quarter 2006 Form 10-Q filed with the SEC on August 9, 2006, also represented to investors that the Company's financial statements and disclosures were made in accordance with

56

1 Generally Accepted Accounting Principles and that the Company's consolidated

2 financial statements contained all necessary adjustments. In this regard, the 2Q:06

3 Form 10-Q stated, in part, the following:

4     The accompanying condensed consolidated financial statements include

5     the consolidated financial statements of New Century's wholly-owned

6     subsidiaries, New Century TRS, New Century Credit, and NCRIV. All

7     material intercompany balances and transactions are eliminated in

8     consolidation.

9

10     *The Company has prepared the accompanying unaudited condensed*

11     *consolidated financial statements in accordance with accounting*

12     *principles generally accepted in the United States of America for*

13     *interim financial information and with the instructions to Form 10-Q*

14     *and Rule 10-01 of Regulation S-X.* Accordingly, the statements do not

15     include all of the information and footnotes required by generally

16     accepted accounting principles for complete financial statements. *In*

17     *the opinion of management, all adjustments (consisting of normal*

18     *recurring accruals) considered necessary for a fair presentation have*

19     *been included . . . .*

20     67.     In addition to the general statements concerning the propriety of the

21 Company's purported internal adjustments and GAAP compliance, the 2Q:06 Form

22 10-Q, incorporated by reference into the August 2006 Series B Preferred Share

23 Offering Proxy-Prospectus, also contained specific representations regarding New

24 Century's significant accounting policies – including its accounting for loan loss and

25 loss reserves – as follows:

26     **Allowance for Losses on Mortgage Loans Held for Investment**

27     For our mortgage loans held for investment, we establish an allowance

28     for loan losses based on our estimate of losses inherent and probable as

57

1   of the balance sheet date. We charge off uncollectible loans at the time
2   of liquidation. *We evaluate the adequacy of this allowance each*
3   *quarter, giving consideration to factors such as the current*
4   *performance of the loans, credit characteristics of the portfolio, the*
5   *value of the underlying collateral and the general economic*
6   *environment.* In order to estimate an appropriate allowance for losses
7   on loans held for investment, we estimate losses using "static pooling,"
8   which stratifies the loans held for investment into separately identified
9   vintage pools. *Using historic experience and taking into consideration*
10  *the factors above, we estimate an allowance for credit losses, which we*
11  *believe is adequate for known and inherent losses in the portfolio of*
12  *mortgage loans held for investment. We charge the loss provision to*
13  *our consolidated statement of income. We charge losses incurred on*
14  *mortgage loans held for investment to the allowance.*
15
16  The allowance for losses on mortgage loans held for investment, as a
17  percentage of total mortgage loans held for investment was
18  approximately 1.31% of the unpaid principal balance of the loans as of
19  June 30, 2006 compared to 1.22% as of December 31, 2005.
20      68.    As further evidence of the purported controls and procedures in place
21  at the time of August 2006 Series B Offering, the 2Q:06 Form 10-Q incorporated by
22  reference into the Series B Preferred Share Offering Proxy-Prospectus also stated, in
23  part, the following:
24      *Item 4. Controls and Procedures*
25
26      *As of June 30, 2006, the end of our second quarter, our management,*
27      *including our Chairman of the Board, President and Chief Executive*
28      *Officer and Chief Financial Officer has evaluated the effectiveness of*

58

*our disclosure controls and procedures, as such term is defined in Rule 13a-15(e)* promulgated under the Securities Exchange Act of 1934, as amended. Based on that evaluation, our Chairman of the Board, President and Chief Executive Officer and Chief Financial Officer concluded, as of June 30, 2006, that our disclosure controls and procedures were effective to ensure that information required to be disclosed by us in reports that we file or submit under the Securities Exchange Act of 1934 is recorded, processed, summarized and reported within the time periods specified in Securities and Exchange Commission rules and forms. *There was no change in our internal control over financial reporting during the quarter ended June 30, 2006 that materially affected, or is reasonably likely to materially affect, our internal control over financial reporting.*

69.     The 2Q:06 Form 10-Q incorporated by reference into the Company's August 2006 Series B Preferred Share Offering Prospectus also contained Certifications by Defendants Cole, Morrice and Dodge that attested to the purported accuracy and completeness of the Company's financial and operational reports, as follows:

**CERTIFICATION PURSUANT TO**
**18 U.S.C. SECTION 1350, AS ADOPTED PURSUANT TO**
**SECTION 906 OF THE**
**SARBANES-OXLEY ACT OF 2002**

In connection with the Quarterly Report of New Century Financial Corporation (the "Company") on Form 10-Q for the period ending June 30, 2006 as filed with the Securities and Exchange Commission on the date hereof (the "Report"), I, **Robert K. Cole**, Chairman of the Board of the Company, certify, pursuant to 18 U.S.C. § 1350, as adopted pursuant to § 906 of the Sarbanes-Oxley Act of 2002, that, to

59