my knowledge:

(1)    The Report fully complies with the requirements of section 13(a) or 15(d) of the Securities Exchange Act of 1934; and

(2)    *The information contained in the Report fairly presents, in all material respects, the financial condition and results of operations of the Company.*

/s/ ROBERT K. COLE
_____
Robert K. Cole
Chairman of the Board
August 9, 2006

**Exhibit 32.2**

### CERTIFICATION PURSUANT TO
### 18 U.S.C. SECTION 1350, AS ADOPTED PURSUANT TO
### SECTION 906 OF THE
### SARBANES-OXLEY ACT OF 2002

In connection with the Quarterly Report of New Century Financial Corporation (the "Company") on Form 10-Q for the period ending June 30, 2006 as filed with the Securities and Exchange Commission on the date hereof (the "Report"), I, Patti M. Dodge, Executive Vice President and Chief Financial Officer of the Company, certify, pursuant to 18 U.S.C. § 1350, as adopted pursuant to § 906 of the Sarbanes-Oxley Act of 2002, that, to my knowledge:

(1)    The Report fully complies with the requirements of section 13(a) or 15(d) of the Securities Exchange Act of 1934; and

(2)    *The information contained in the Report fairly presents, in all*

60

*material respects, the financial condition and results of operations of the Company.*

/s/ **PATTI M. DODGE**

Patti M. Dodge
Executive Vice President and
Chief Financial Officer
August 9, 2006

**Exhibit 32.3**

## CERTIFICATION PURSUANT TO
## 18 U.S.C. SECTION 1350, AS ADOPTED PURSUANT TO
### SECTION 906 OF THE
### SARBANES-OXLEY ACT OF 2002

In connection with the Quarterly Report of New Century Financial Corporation (the "Company") on Form 10-Q for the period ending June 30, 2006 as filed with the Securities and Exchange Commission on the date hereof (the "Report"), I, **Brad A. Morrice**, President and Chief Executive Officer of the Company, certify, pursuant to 18 U.S.C. § 1350, as adopted pursuant to § 906 of the Sarbanes-Oxley Act of 2002, that, to my knowledge:

(1)    The Report fully complies with the requirements of section 13(a) or 15(d) of the Securities Exchange Act of 1934; and

(2)    *The information contained in the Report fairly presents, in all material respects, the financial condition and results of operations of the Company.*

/s/ **BRAD A. MORRICE**

61

Brad A. Morrice
President and Chief Executive Officer
August 9, 2006

70.    As investors ultimately learned following the end of the Class Period, the statements contained and/or incorporated by reference into New Century's Proxy-Prospectus issued in connection with the Company's August 2006 Series B Preferred Share Offering, referenced above, were each materially false and misleading, for the following reasons, among others:

(a)    At the time of the Series B Preferred Share Offering, it was not true that the Company maintained necessary and proper internal financial controls and operational procedures so as to assure that New Century's financial results were true, accurate or reliable, or reported in conformity with Generally Accepted Accounting Principles.  In fact, at that time, Defendants had propped up the Company's results by failing to adequately reserve for loan losses or maintain proper underwriting standards, and by failing to write down the value of impaired assets on a timely basis, such that Defendants reported results were not true, accurate or reliable at that time;

(b)    At the time of the August 2006 Series B Preferred Share Offering, Defendants had presented a financial statement and balance sheet that had each materially overstated the Company's profitability by under-reporting reserves, by over-reporting New Century's asset values, and by failing to make proper, timely adjustments to the Company's operational and financial reports;

(c)    As a result of the Company's lack of internal operational procedures and financial controls, and as a result of Defendants' failure to properly account for its allowances for loan losses and/or loan repurchases, at the time of the Series B Preferred Share Offering in August 2006 New Century's financial results were not true or accurate and they were not prepared in conformity with GAAP or SEC accounting rules -- evidenced by Defendants ultimate restatement of New

1  Century's financial results for the first three quarters of 2006; and

2          (d)    As a result of the aforementioned adverse conditions that

3  Defendants failed to disclose, at the time of the Series B Preferred Share Offering,

4  Defendants lacked any reasonable basis to claim that the Company was operating

5  according to plan, or that New Century could achieve guidance sponsored and/or

6  endorsed by Defendants.

7          **Liquidity & Capital Resources**

8          71.    The importance of the Liquidity Preferences afforded the Series A and

9  Series B Preferred Shares cannot be understated, given the significant debt

10 maintained by the Company and the diminished value of its assets.  As evidence of

11 this, the 3Q:06 Form 10-Q, filed by Defendants with the SEC on or about November

12 9, 2006, describes the Company's Liquidity and Capital Resources, in part, as

13 follows:

14         **Liquidity and Capital Resources**

15         *Credit Facilities*

16         We have repurchase agreements with Bank of America, N.A., Barclays

17         Bank PLC, Bear Stearns Mortgage Capital Corporation, Citigroup

18         Global Markets Realty Corp., Credit Suisse First Boston Mortgage

19         Capital LLC, Deutsche Bank Securities, Inc., IXIS Real Estate Capital

20         Inc. (formerly known as CDC Mortgage Capital Inc.), Morgan Stanley

21         Mortgage Capital Inc., UBS Real Estate Securities Inc., Goldman Sachs

22         Mortgage Company, State Street Bank and Trust Company and

23         Guaranty Bank, and we also have an asset-backed commercial paper

24         facility. We use these facilities to finance the actual funding of our loan

25         originations and purchases and to aggregate pools of mortgage loans

26         pending sale through securitizations or whole loan sales. We typically

27         sell all of our mortgage loans within one to three months of their

28         funding and pay down the credit facilities with the proceeds.

Our credit facilities contain certain customary covenants, which, among other provisions, require us to maintain specified levels of liquidity, net worth and debt-to-equity ratios, restrict indebtedness and investments and require compliance with applicable laws. The minimum level of liquidity currently required under our credit facilities is $134.4 million, the minimum amount of net worth required is $750.0 million, and *debt-to-equity ratio limitations range from 12 to 1 to 16 to 1 and generally exclude non-recourse debt. We deliver compliance certificates on a monthly and quarterly basis to our lenders to certify to our continued compliance with the covenants.... The material terms and features of our various credit facilities are as follows:*

***Asset-backed commercial paper facility***.   Von Karman Funding Trust, a special-purpose, wholly owned subsidiary of New Century Mortgage Corporation, or New Century Mortgage, has a $2.0 billion asset-backed commercial paper facility.... As of September 30, 2006, the balance outstanding under the facility was *$1.3 billion...*

***Bank of America master repurchase agreement***. We have a $2.0 billion master repurchase agreement with Bank of America, $1.0 billion of which is uncommitted.... As of September 30, 2006, the balance outstanding under the facility was *$876.4 million...*

***Bank of America master repurchase agreement***. We have a $1.0 billion committed master repurchase agreement with Bank of America.... As of September 30, 2006, the balance outstanding under the facility was *$394.1 million....*

64

1

2    *Barclays master repurchase agreement.* We have a $1.0 billion

3    committed master repurchase agreement with Barclays Bank.... As of

4    September 30, 2006, the balance outstanding under the facility was

5    *$217.7 million...*

6

7    *Bear Stearns master repurchase agreement.* We have an

8    $800.0 million master repurchase agreement with Bear Stearns

9    Mortgage Capital, $400.0 million of which is uncommitted.... As of

10   September 30, 2006, the balance outstanding under this facility was

11   *$636.3 million.*

12

13   *Citigroup master repurchase agreement.* We have a $950.0 million

14   uncommitted master repurchase agreement with Citigroup Global

15   Markets Realty Corp.... As of September 30, 2006, the balance

16   outstanding under this facility was *$137.7 million...*

17

18   *Credit Suisse First Boston master repurchase agreement.* We have a

19   $1.5 billion master repurchase agreement with Credit Suisse First

20   Boston Mortgage Capital, $500.0 million of which is uncommitted....

21   As of September 30, 2006, the outstanding balance under the facility

22   was *$546.5 million...*

23

24   *Deutsche Bank master repurchase agreement.* We have a $1.0 billion

25   committed master repurchase agreement with Deutsche Bank.... As of

26   September 30, 2006, the outstanding balance under the facility was

27   *$582.5 million....*

28

65

*Deutsche Bank master repurchase agreement for delinquent loans.* We have a $150.0 million committed master repurchase agreement with Deutsche Bank that is secured by delinquent loans or REO properties.... As of September 30, 2006, the balance outstanding under this facility was *$129.4 million*....

*IXIS master repurchase agreement.* We have an $850.0 million master repurchase agreement with IXIS Real Estate Capital, $150 million of which is uncommitted.... As of September 30, 2006, the balance outstanding under this facility was *$449.3 million*....

*Morgan Stanley master repurchase agreement.* We have a $3.0 billion committed master repurchase agreement with Morgan Stanley Bank and Morgan Stanley Mortgage Capital, Inc.... As of September 30, 2006, the balance outstanding under this facility was *$1.5 billion*....

*UBS Real Estate Securities master repurchase agreement.* We have a $2.0 billion master repurchase agreement with UBS Real Estate Securities, $500 million of which is uncommitted.... As of September 30, 2006, the balance outstanding under this facility was *$1.5 billion*....

*Goldman Sachs Mortgage master repurchase agreement.* We have a $450.0 million master repurchase agreement with Goldman Sachs Mortgage Company, $250.0 million of which is uncommitted.... As of September 30, 2006, the balance outstanding under this facility was *$91.2 million*....

66

*State Street Bank receivables purchase agreement.* We have a $100.0 million committed receivables repurchase agreement with Galleon Capital Corporation, State Street Capital Markets, LLC and State Street Bank and Trust Company.... As of September 30, 2006, the balance outstanding under this facility was *$48.7 million....*

*Guaranty Bank mortgage loan purchase and sale agreement.* We have a $125.0 million committed master repurchase agreement with Guaranty Bank.... As of September 30, 2006, the balance outstanding under this facility was *$71.5 million....*

72.    In addition to the foregoing, the 3Q:06 Form 10-Q also shows other debt including the Company's Convertible Senior Notes and its Junior Subordinate Debt, as follows:

**Convertible Senior Notes**

On July 8, 2003, New Century TRS closed a private offering of *$210.0 million* of 3.50% convertible senior notes due July 3, 2008 pursuant to Rule 144A under the Securities Act of 1933. On March 17, 2004, the convertible senior notes became convertible into New Century TRS common stock at a conversion price of $34.80 per share. As a result of the merger that affected our conversion to a REIT, the convertible senior notes became convertible into shares of New Century common stock. In December 2004 and June 2005, through a series of transactions, all but $5,000,000 of the original outstanding principal balance of the convertible senior notes was converted into shares of our common stock. On February 17, 2006, the holder of the convertible senior notes elected to convert the remaining $5,000,000

67

1    aggregate principal amount of convertible senior notes into

2    165,815 shares of New Century common stock.

3

**Junior Subordinated Notes**

4    On September 13, 2006, we sold through New Century Capital Trust I,

5    a Delaware statutory trust (the "Trust"), $50,000,000 in aggregate

6    liquidation amount of preferred securities of the Trust (the "Preferred

7    Securities") in a private placement transaction. The Preferred Securities

8    require quarterly distributions at a fixed rate of 8.65% through the

9    distribution payment date in September 2011, whereupon the rate floats

10    at three-month LIBOR plus 3.50% thereafter.

11

12    The Trust simultaneously issued and sold 1,545 shares of common

13    securities of the Trust (the "Common Securities") to us for $1,545,000

14    in aggregate liquidation amount. The 1,545 Common Securities

15    constitute all of the issued and outstanding Common Securities of the

16    Trust. The Trust used the proceeds from the sales of the Preferred

17    Securities and the Common Securities to purchase $51,545,000

18    aggregate principal amount of our junior subordinated notes due 2036

19    (the "Junior Subordinated Notes"). The terms of the Junior

20    Subordinated Notes are substantially the same as the terms of the

21    Preferred Securities.

22

23        73.    It now appears that Defendants also took advantage of the Company's

24    purported strong balance sheet and cash flows – aided substantially by the almost

25    $200 million raised through the sales of Preferred shared through the June 2005 and

26    August 2006 Offerings – and between early May 2005 (as Defendants planned the

27    larger of the two Offerings) and continuing until early February (immediately before

28    the Company's share price was eviscerated), Company insiders – including its

1  officers and directors – sold approximately $66.0 million of their personally held
2  New Century stock, as follows:

3       INSIDER TRANSACTIONS REPORTED BETWEEN MAY 2005 – FEBRUARY 2007[6]

| Date | Insider | Shares | Sale/ Disposition (Non Open Market) | Value |
|---|---|---|---|---|
| 8-Feb-07 | SACHS MICHAEL Director | 140,000 | $19.62 per share | $ 2,746,800 |
| 2-Feb-07 | MORRICE BRAD A Officer | 5,898 | $30.25 per share | $178,414 |
| 22-Jan-07 | COLE ROBERT K Director | 4,792 | $30.30 per share | $145,197 |
| 22-Jan-07 | MORRICE BRAD A Officer | 4,020 | $30.30 per share | $121,806 |
| 22-Jan-07 | GOTSCHALL EDWARD F Director | 4,020 | $30.30 per share | $121,806 |
| 21-Nov-06 | GOTSCHALL EDWARD F Director | 136,145 | $36.62 per share | $4,985,629 |
| 20-Nov-06 | GOTSCHALL EDWARD F Director | 65,300 | $36.99 per share | $2,415,447 |
| 6-Oct-06 | COLE ROBERT K Officer | 25,000 | $40.32 per share | $1,008,000 |
| 2-Oct-06 | GOTSCHALL EDWARD F Director | 100,000 | $38.98 per share | $3,897,999 |
| 15-Sep-06 | COLE ROBERT K Officer | 25,000 | $41.43 per share | $1,035,750 |
| 15-Sep-06 | THEOLOGIDES STERGIOS Officer | 5,000 | $41.38 per share | $206,900 |
| 5-Sep-06 | GOTSCHALL EDWARD F Director | 80,000 | $38.36 per share | $3,068,800 |
| 1-Sep-06 | GOTSCHALL EDWARD F Director | 20,000 | $37.97 per share | $759,400 |

---

[6] While this case does not sound in fraud, and while these insider common stock sales are *not* in evidence to support a claim for scienter or evidence Defendants' knowledge of wrongdoing, the size, volume and timing of these insider stock trades can not simply be ignored, and they are reproduced herein only to provide the trier of fact with more background information concerning the acts and practices of Defendants' during the same time that New Century was selling or preparing to sell, or soon after the Company had sold, almost $200 million of Preferred Shares in connection with the June 2005 and August 2006 Series A and Series B Preferred Stock Offerings.

69

| Date | Name / Title | Shares | Price | Total |
|---|---|---|---|---|
| 15-Aug-06 | GOTSCHALL EDWARD F<br>Director | 100,000 | $41.69 per share | $4,169,000 |
| 7-Aug-06 | COLE ROBERT K<br>Officer | 100,000 | $46.60 per share | $4,660,000 |
| 18-Jul-06 | DODGE PATTI M<br>Officer | 13,889 | $46.00 per share | $638,894 |
| 30-Jun-06 | MORRICE BRAD A<br>Officer | 6,776 | $45.75 per share | $310,002 |
| 30-Jun-06 | CLOYD KEVIN<br>Officer | 2,539 | $45.75 per share | $116,159 |
| 31-Mar-06 | MORRICE BRAD A<br>Officer | 12,144 | $46.02 per share | $558,866 |
| 1-Mar-06 | FLANAGAN PATRICK J<br>Officer | 25,000 | $39.06 per share | $976,500 |
| 28-Feb-06 | FLANAGAN PATRICK J<br>Officer | 25,000 | $38.81 per share | $970,250 |
| 27-Feb-06 | FLANAGAN PATRICK J<br>Officer | 4,712 | $39.52 per share | $186,218 |
| 2-Feb-06 | GOTSCHALL EDWARD F<br>Officer | 6,342 | $42.02 per share | $266,490 |
| 2-Feb-06 | MORRICE BRAD A<br>Officer | 6,342 | $42.02 per share | $266,490 |
| 2-Feb-06 | COLE ROBERT K<br>Officer | 6,342 | $42.02 per share | $266,490 |
| 23-Jan-06 | GOTSCHALL EDWARD F<br>Officer | 11,364 | $37.16 per share | $422,286 |
| 23-Jan-06 | MORRICE BRAD A<br>Officer | 11,370 | $37.16 per share | $422,509 |
| 23-Jan-06 | COLE ROBERT K<br>Officer | 12,193 | $37.16 per share | $453,091 |
| 6-Dec-05 | LANGE DONALD E<br>Director | 5,000 | $35.64 - $35.78 per share | $179,000 |
| 23-Nov-05 | LANGE DONALD E<br>Director | 5,000 | $38.76 - $38.77 per share | $194,000 |
| 18-Oct-05 | MORRICE BRAD A<br>Officer | 5,810 | $31.77 per share | $184,583 |
| 18-Oct-05 | FLANAGAN PATRICK J<br>Officer | 14,947 | $31.77 per share | $474,866 |
| 9-Sep-05 | GOTSCHALL EDWARD F<br>Officer | 42,200 | $42.23 per share | $1,782,105 |
| 8-Sep-05 | GOTSCHALL EDWARD F<br>Officer | 32,800 | $42.75 per share | $1,402,200 |
| 19-Jul-05 | MORRICE BRAD A<br>Officer | 7,025 | $51.62 per share | $362,630 |

70

| | | | | | |
|---|---|---|---|---|---|
| 5-Jul-05 | MORRICE BRAD A<br>Officer | 64,500 | $51.33 per share | | $3,310,785 |
| 1-Jul-05 | MORRICE BRAD A<br>Officer | 60,500 | $51.65 per share | | $3,124,825 |
| 30-Jun-05 | DODGE PATTI M<br>Officer | 4,782 | $51.25 per share | | $245,077 |
| 30-Jun-05 | CLOYD KEVIN<br>Officer | 3,750 | $51.25 per share | | $192,187 |
| 24-Jun-05 | FLANAGAN PATRICK J<br>Officer | 41,585 | $50.52 per share | | $2,100,874 |
| 8-Jun-05 | GOTSCHALL EDWARD F<br>Officer | 100,000 | $51.93 per share | | $5,193,000 |
| 6-Jun-05 | DODGE PATTI M<br>Officer | 6,878 | $51.81 per share | | $356,349 |
| 10-May-05 | THEOLOGIDES STERGIOS<br>Officer | 5,000 | $46.31 per share | | $231,550 |
| 9-May-05 | COLE ROBERT K<br>Officer | 250,000 | $46.55 per share | | $11,637,500 |

## THE TRUE FINANCIAL AND OPERATIONAL CONDITION OF NEW CENTURY IS BELATED DISCLOSED

74.    On February 7, 2007, Defendants shocked and alarmed investors after New Century announced that *its previously filed financial statements for the first three quarters of 2006 could not be relied upon,* and that the Company would be forced to restate that period, at a minimum. In addition to the foregoing, at that time Defendants also lowered forward guidance, and published a release that stated, in part, the following:

New Century Financial Corporation to Restate Financial Statements for the Quarters Ended March 31, June 30 and September 30, 2006

IRVINE, Calif., Feb. 7 /PRNewswire-FirstCall/ -- New Century Financial Corporation (NYSE: NEW), a real estate investment trust (REIT), today announced that it will restate its consolidated financial results for the quarters ended March 31, June 30 and September 30,

71

1  2006 to correct errors the company discovered in its application of
2  generally accepted accounting principles regarding the company's
3  allowance for loan repurchase losses.

4  * * *

6  In light of the pending restatements, *the company's previously filed*
7  *condensed consolidated financial statements for the quarters ended*
8  *March 31, June 30 and September 30, 2006 and all earnings-related*
9  *press releases for those periods should no longer be relied upon.* The
10 company expects to file amended Quarterly Reports on Form 10-Q for
11 the quarters ended March 31, June 30 and September 30, 2006 as soon
12 as practicable, with a goal to file by March 1, 2007. The company also
13 expects that the errors leading to these restatements constitute material
14 weaknesses in its internal control over financial reporting for the year
15 ended December 31, 2006. However, the company has taken significant
16 steps to remediate these weaknesses and anticipates remediating them
17 as soon as practicable.

18  75.    The February 7, 2007 release also revised forward guidance
19 downward, as follows:

20 *Fourth Quarter 2006 Developments*

21 The increasing industry trend of early-payment defaults and,
22 consequently, loan repurchases intensified in the fourth quarter of 2006.
23 The company continued to observe this increased trend in its early-
24 payment default experience in the fourth quarter, and the volume of
25 repurchased loans and repurchase claims remains high.

27 In addition, the company currently expects to record a fair value
28 adjustment to its residual interests to reflect revised prepayment, loss

72

1    and discount rate assumptions with respect to the loans underlying

2    these residual interests, based on indicative market data. *While the*

3    *company is still determining the magnitude of these adjustments to its*

4    *fourth quarter 2006 results, the company expects the combined impact*

5    *of the foregoing to result in a net loss for that period.*

6    76.    Following the publication of this release, New Century Preferred

7    shares declined precipitously – with Series B Preferred shares of New Century

8    falling from just below $25.00 per share on February 7, 2007, to a close of just

9    above $19.00 per share within two trading days, on February 12, 2006.

10    77.    On March 5, 2007, New Century's Preferred shares fell after Standard

11    & Poor's credit and debt rating agency cut its ratings on the Company to CCC rating

12    – eight levels below investment grade levels – citing the negative impact of a *new*

13    *criminal investigation into the Company.* According to a regulatory filing made late

14    Friday, the U.S. Attorney's Office for the Central District of California is now

15    conducting a federal criminal inquiry into trading in New Century securities as well

16    as accounting errors. According to S&P, "*the investigation and the damage it might*

17    *do to the Company's reputation create concern about New Century's ability to*

18    *maintain its warehouse lending lines, which are necessary to fund mortgage*

19    *originations.*"

20    78.    Following the announcement of this investigation on March 2, 2007,

21    when shares resumed trading on March 5, 2007, New Century's Preferred shares

22    again declined precipitously – with Series B Preferred shares of New Century

23    falling from $19.15 per share on March 2, 2007 to a close of $8.00 per share the

24    following trading day. Series A Preferred Shares also declined materially at or

25    about the same time.

26    79.    In addition to the foregoing, on March 7, 2007, following the close of

27    trading, Defendants also revealed that New Century was operating well below

28    analysts' expectations, that the Company could not support guidance and that, "as a

73

1  result of its current constrained funding capacity," New Century had *ceased*

2  *accepting loan applications from prospective borrowers* -- effectively putting the

3  Company out of business.

4      80.    At that time, defendant Einhorn also resigned from the Company's

5  Board of Directors, effective immediately as of March 7, 2007. Defendant Einhorn

6  was initially appointed as a director of the Company, effective on or about

7  March 31, 2006.

8  <center>CAUSATION AND ECONOMIC LOSS</center>

9      81.    Defendants' publication of materially false and misleading statements

10  that were contained in or incorporated by reference in to the Company's June 2005

11  Proxy-Prospectus and in its August 2006 Proxy-Prospectus allowed Defendants to

12  sell a combined total of over $178.0 million of Series A and Series B Preferred

13  shares to the public in the June 2005 and August 2006 Offerings, at artificially

14  inflated levels.

15      82.    Contrary to the positive statements made by Defendants and contained

16  in or incorporated by reference into the June 2005 Series A Preferred Share Offering

17  Prospectus or the August 2006 Series B Preferred Share Offering Prospectus,

18  beginning on February 7, 2007, Defendants revealed that the Company would be

19  forced to restate its previously reported financial results for all of 2006, that New

20  Century would come nowhere-near achieving guidance previously sponsored and/or

21  endorsed by Defendants, and that New Century would be forced to take large

22  charges to account for its impaired assets and lack of reserves. Later, on March 2,

23  2007, Defendants also revealed that the Company was subject to a criminal

24  investigation and rescinded guidance entirely. These belated disclosures had an

25  immediate, adverse impact on the price of New Century Preferred shares.

26      83.    The decline in New Century's Series A and Series B Preferred share

27  prices following the Company's February 7, 2007 and March 2, 2007 disclosures,

28  was a direct result of the nature and extent of Defendants' illegal actions being

<center>74</center>

1   revealed to investors and to the market.   The timing and magnitude of New

2   Century's Preferred stock price decline negates any inference that the losses suffered

3   by plaintiff and the other members of the Class was caused by changed market

4   conditions, macroeconomic or industry factors or even Company-specific facts

5   unrelated to Defendants' illegal and improper course of conduct.

6       84.    During the same period in which New Century's Preferred share prices

7   fell as much as 75% as a result of Defendants' illegal and improper course of

8   conduct and their illegal and improper conduct being revealed, the Standard &

9   Poor's 500 securities index was relatively unchanged.   The subsequent significant

10  decline in the value of the Company's shares occurred immediately after

11  Defendants' prior misstatements and other illegal and improper conduct was

12  revealed.  The economic loss, i.e. damages suffered by plaintiff and other purchasers

13  of Series B Preferred Shares, was a direct result of Defendants' illegal and improper

14  course of conduct, as indicated by the chart below:



## NO SAFE HARBOR

25      85.    The statutory safe harbor provided for forward-looking statements

27  under certain circumstances does not apply to any of the allegedly false statements

28  pleaded in this complaint.  Many of the specific statements pleaded herein were not

1    identified as "forward-looking statements" when made.  To the extent there were

2    any forward-looking statements, there were no meaningful cautionary statements

3    identifying important factors that could cause actual results to differ materially from

4    those in the purportedly forward-looking statements.  Alternatively, to the extent

5    that the statutory safe harbor does apply to any forward-looking statements pleaded

6    herein, Defendants are liable for those false forward-looking statements because at

7    the time each of those forward-looking statements was made, the particular speaker

8    knew that the particular forward-looking statement was false, and/or the forward-

9    looking statement was authorized and/or approved by an executive officer of New

10   Century.

<div align="center">

**FIRST CLAIM**

**COUNT I**

**For Violation of Section 11 of the Securities Act**

**(Against All Defendants)**

</div>

15       86.    Plaintiff incorporates by reference each and every allegation contained

16   above, as if set forth herein only to the extent, however, that such allegations do not

17   allege fraud, scienter or the intent of the Defendants to defraud plaintiff or members

18   of the Class.  This count is predicated upon Defendants strict liability for making

19   false and materially misleading statements in the Registration Statement and Proxy-

20   Prospectus.  This Count is asserted by plaintiff against all Defendants by and on

21   behalf of persons who acquired shares of the Company pursuant to the false

22   Registration Statement and Proxy Statement issued in connection with the June 2005

23   Series A Preferred Share Offering and August 2006 Series B Preferred Share

24   Offering.

25       87.    New Century is the issuer of the stock issued via the false Registration

26   Statement and Proxy-Prospectus.  As such, New Century is strictly liable for each

27   false and misleading statement contained therein.

28       88.    The Defendants identified in paragraphs 16-27 and 29 and 31, supra.,

<div align="center">76</div>

1   each prepared and/or aided in the preparation of the joint Proxy-Prospectus or served
2   as Underwriters of the June 2005 Series A Preferred Share Offering and/or the
3   August 2006 Series B Preferred Share Offering, therefore, each of these Defendants
4   had a duty to make a reasonable investigation of the statements contained in the
5   Registration Statement and joint Proxy-Prospectus to ensure that said statements
6   were true and that there was no omission to state any material fact required to be
7   stated in order to make the statements contained therein not misleading.  In the
8   exercise of reasonable care, Defendants should have known of the material
9   misstatements and omissions contained in the Registration Statement and Proxy-
10  Prospectus and also should have known of the omissions of material fact necessary
11  to make the statements made therein not misleading.  As such, each of these
12  Defendants are liable to plaintiff and the Class.

13       89.    Each of the Defendants identified in Count I issued, caused to be
14  issued and participated in the issuance of materially false and misleading written
15  statements to the investing public which were contained in the Registration
16  Statement and joint Proxy-Prospectus which misrepresented or failed to disclose,
17  inter alia, the facts set forth above.  By reasons of the conduct alleged herein, each
18  defendant violated, and/or controlled a person who violated § 11 of the Securities
19  Act.  As a direct and proximate result of Defendants' wrongful conduct, the price for
20  the New Century common stock sold in the June 2005 Series A Preferred Share
21  Offering and August 2006 Series B Preferred Share Offering were artificially
22  inflated and plaintiff and the Class suffered substantial damages in connection with
23  their purchase of New Century common stock.

24       90.    Plaintiff and other members of the Class acquired their New Century
25  stock without knowledge of the untruths and/or omissions alleged herein.  Plaintiff
26  and the other members of the Class were thus damaged by Defendants' misconduct
27  and by the material misstatements and omissions of the aforementioned Registration
28  Statement and Proxy-Prospectus.

1    91.    This action was brought within one year after the discovery of the
2  untrue statements and omissions and within three years after the June 2005 Series A
3  Preferred Share Offering and August 2006 Series B Preferred Share Offering of
4  New Century Preferred stock.

<div align="center">

### COUNT II

**For Violation of Section 15 of the Securities Act**

**(Against The Individual Defendants)**

</div>

8    92.    Plaintiff incorporates by reference each and every allegation contained
9  above as if set forth herein. This Count is asserted against the Individual Defendants.

10    93.    Throughout the Class Period, the Individual Defendants acted as
11  controlling persons of New Century within the meaning of § 15 of the Securities
12  Act.  By reason of their stock ownership, senior management positions and/or
13  directorships at the Company, as alleged above, these Defendants, individually and
14  acting pursuant to a common plan, had the power to influence, and exercised the
15  same to cause New Century to engage in the unlawful acts and conduct complained
16  of herein.

17    94.    By reason of such conduct, the Defendants named in this Count are
18  liable pursuant to § 15 of the Securities Act.  As a direct and proximate result of
19  their wrongful conduct, plaintiffs and the Class suffered damages in connection with
20  their acquisition of New Century common stock.

<div align="center">

### COUNT III

**Violation of Section 12(a)(2) of the Securities Act**

**(Against All Defendants)**

</div>

24    95.    Plaintiff repeats and realleges each and every allegation contained
25  above.

26    96.    This Count is brought by plaintiff pursuant to Section 12(a)(2) of the
27  Securities Act on behalf of all purchasers of New Century shares in connection with
28  and traceable to the June 2005 Series A Preferred Share Offering and/or August

<div align="center">78</div>

1  2006 Series B Preferred Share Offering.  This cause of action is brought against all
2  Defendants.

3      97.   Defendants were sellers, offerors, underwriters and/or solicitors of
4  sales of the New Century shares offered pursuant to the June 2005 Series A
5  Preferred Share Offering joint Proxy-Prospectus and Registration Statement and/or
6  the August 2006 Series B Preferred Share Offering joint Proxy-Prospectus and
7  Registration Statement.

8      98.   The New Century June 2005 Series A Preferred Share Offering joint
9  Proxy-Prospectus and Registration Statement and the August 2006 Series B
10  Preferred Share Offering joint Proxy-Prospectus and Registration Statement
11  contained untrue statements of material facts, omitted to state other facts necessary
12  to make the statements made not misleading, and concealed and failed to disclose
13  material facts.  Defendants' actions of solicitation included participating in the
14  preparation of the false and misleading June 2005 Series A Preferred Share Offering
15  Proxy-Prospectus and the August 2006 Series B Preferred Share Offering Proxy-
16  Prospectus.

17      99.   The Defendants owed to the purchasers of New Century shares, which
18  were sold in the June 2005 Series A Preferred Share Offering joint Proxy-Prospectus
19  and Registration Statement and the August 2006 Series B Preferred Share Offering
20  joint Proxy-Prospectus and Registration Statement, the duty to make a reasonable
21  and diligent investigation of the statements contained therein, to ensure that such
22  statements were true and that there was no omission to state a material fact required
23  to be stated in order to make the statements contained therein not misleading.  These
24  Defendants knew of, or in the exercise of reasonable care should have known of, the
25  misstatements and omissions contained in the Offering materials as set forth above.

26      100.   Plaintiff and other members of the Class purchased or otherwise
27  acquired New Century shares pursuant to and traceable to the defective joint Proxy-
28  Prospectus and Registration Statement.  Plaintiff did not know, or in the exercise of

1  reasonable diligence could not have known, of the untruths and omissions contained
2  in the June 2005 Series A Preferred Share Offering joint Proxy-Prospectus and
3  Registration Statement and the August 2006 Series B Preferred Share Offering joint
4  Proxy-Prospectus and Registration Statement.

5    101.   Plaintiff, individually and representatively, hereby offers to tender to
6  Defendants those securities which plaintiff and other Class members continue to
7  own, on behalf of all members of the Class who continue to own such securities, in
8  return for the consideration paid for those securities together with interest thereon.

9    102.   By reason of the conduct alleged herein, these Defendants violated,
10  and/or controlled a person who violated, § 12(a)(2) of the Securities Act.
11  Accordingly, plaintiff and members of the Class who purchased New Century Series
12  A or Series B Preferred Shares purchased in or traceable to the Company's June
13  2005 and/or August 2006 Public Offerings, have the right to rescind and recover the
14  consideration paid for their New Century shares and hereby elect to rescind and
15  tender their New Century shares to the Defendants sued herein.  Plaintiff and Class
16  members who have sold their New Century shares are entitled to rescissory
17  damages.

18    103.   Less than three years elapsed from the time that the securities upon
19  which this Count is brought were sold to the public to the time of the filing of this
20  action.  Less than one year elapsed from the time when plaintiff discovered or
21  reasonably could have discovered the facts upon which this Count is based to the
22  time of the filing of this action.

23              **PRAYER**

24    WHEREFORE, plaintiff prays for relief and judgment, as follows:

25    A.   Determining that this action is a proper class action, designating
26  plaintiff as Lead Plaintiff and certifying plaintiff as a class representative under Rule
27  23 of the Federal Rules of Civil Procedure and plaintiff's counsel as Lead Counsel;

28    B.   Awarding compensatory damages in favor of plaintiff and the other

80

1   Class members against all Defendants, jointly and severally, for all damages

2   sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial,

3   including interest thereon;

4         C.     Awarding plaintiff and the Class their reasonable costs and expenses

5   incurred in this action, including counsel fees and expert fees;

6         D.     Awarding extraordinary, equitable and/or injunctive relief as permitted

7   by law, equity and the federal statutory provisions sued hereunder, pursuant to Rules

8   64 and 65 and any appropriate state law remedies to assure that the Class has an

9   effective remedy; and

10        E.     Awarding members of the Class who purchased New Century Series A

11   or Series B Preferred shares, in or traceable to the Company's June 2005 and/or

12   August 2006 Public Offerings, the right to rescind and recover the consideration

13   paid for their New Century shares, and to award other members of the Class who

14   have sold their New Century Preferred Class A or Class B shares rescissory

15   damages; and

16        F.     Such other and further relief as the Court may deem just and proper.

17                       JURY TRIAL DEMANDED

18     Plaintiff hereby demands a trial by jury.

19   DATED: April 5, 2007           HULETT HARPER STEWART LLP

20                           BLAKE MUIR HARPER
                           JENNIFER A. KAGAN

21

22

23

24                           JENNIFER A. KAGAN

25                           550 West C Street, Suite 1600
                          San Diego, CA 92101

26

27                           Telephone: (619) 338-1133
                          Facsimile: (619) 338-1139

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

KAHN GAUTHIER SWICK LLC
MICHAEL A. SWICK
KIM MILLER
12 East 41st Street, 12th Floor
New York, NY 10017
Telephone: (212) 696-3730
Facsimile: (504) 455-1498
e-mail:      michael.swick@kgscounsel.com
             kim.miller@kgscounsel.com

KAHN GAUTHIER SWICK, LLC
LEWIS KAHN
650 Poydras Street, Suite 2150
New Orleans, LA 70130
Telephone: (504) 455-1400
Facsimile: (504) 455-1498
e-mail:      lewis.kahn@kgscounsel.com

Attorneys for Plaintiff

# EXHIBIT A

## CERTIFICATION IN SUPPORT OF APPLICATION FOR LEAD PLAINTIFF

_William F. Kornfeld JR_ (name) ("plaintiff") declares, as to the claims asserted under the federal securities law, that:

1.  Plaintiff has fully reviewed the facts of the complaint(s) filed in this action alleging violations of the securities laws and plaintiff is willing to serve as a lead plaintiff in this case and all other related cases that may be consolidated with it.

2.  Plaintiff did not purchase securities of New Century Financial Corporation (NEW) at the direction of counsel or in order to participate in a private action under the federal securities laws.

3.  Plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.

4.  During the Class Period, plaintiff has executed transactions in the securities of New Century Financial Corporation (NEW) as follows. See Attached Schedule.

5.  In the last three years, plaintiff has not sought to serve as a representative party on behalf of a class in an action filed under the federal securities laws, except as indicated herein.

6.  Plaintiff will not accept payment for serving as a lead plaintiff beyond its pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the Class as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated: 26 day of MAR, 2007

Plaintiff

**William Kornfeld, Jr.    New Century Preferred A B Transactions**

| Date | | Quantity | Price | | Gross | | Type |
|------|------|---------|-------|------|-------|------|------|
| 10/27/2005 | BUY | 3,000 | $ | 21.9400 | $ | 65,820.00 | A |
| 10/28/2005 | BUY | 800 | $ | 21.9100 | $ | 17,528.00 | A |
| 10/28/2005 | BUY | 200 | $ | 21.9000 | $ | 4,380.00 | A |
| 11/2/2005 | BUY | 1,000 | $ | 22.4500 | $ | 22,450.00 | A |
| 12/28/2005 | BUY | 1,000 | $ | 23.0700 | $ | 23,070.00 | A |
| 2/8/2007 | BUY | 500 | $ | 24.0600 | $ | 12,030.00 | B |
| 2/8/2007 | BUY | 500 | $ | 23.5200 | $ | 11,760.00 | B |
| 2/8/2007 | BUY | 500 | $ | 23.0700 | $ | 11,535.00 | B |
| 2/8/2007 | BUY | 800 | $ | 22.7499 | $ | 18,199.92 | B |
| 2/8/2007 | BUY | 200 | $ | 22.7500 | $ | 4,550.00 | B |
| 2/9/2007 | BUY | 1,000 | $ | 22.2600 | $ | 22,260.00 | B |
| 2/9/2007 | BUY | 1,000 | $ | 21.8000 | $ | 21,800.00 | B |
| 2/9/2007 | BUY | 1,000 | $ | 21.1200 | $ | 21,120.00 | B |
| 2/9/2007 | BUY | 1,000 | $ | 20.8000 | $ | 20,800.00 | B |
| 2/9/2007 | BUY | 500 | $ | 20.4600 | $ | 10,230.00 | B |
| 2/12/2007 | BUY | 1,000 | $ | 19.8400 | $ | 19,840.00 | B |
| 2/12/2007 | BUY | 500 | $ | 19.3400 | $ | 9,670.00 | B |
| 2/28/2007 | BUY | 500 | $ | 18.8900 | $ | 9,445.00 | B |
| 2/28/2007 | BUY | 500 | $ | 18.8899 | $ | 9,444.95 | B |
| 3/5/2007 | BUY | 600 | $ | 8.5499 | $ | 5,129.94 | B |
| 3/5/2007 | BUY | 900 | $ | 8.5500 | $ | 7,695.00 | B |
| 3/9/2007 | SELL | 2,600 | $ | 8.5000 | $ | 22,100.00 | B |
| 3/9/2007 | SELL | 200 | $ | 8.6100 | $ | 1,722.00 | B |
| 3/9/2007 | SELL | 200 | $ | 8.7000 | $ | 1,740.00 | B |
| 3/9/2007 | SELL | 1,000 | $ | 8.5400 | $ | 8,540.00 | B |
| 3/9/2007 | SELL | 100 | $ | 9.8100 | $ | 981.00 | B |
| 3/9/2007 | SELL | 900 | $ | 9.8200 | $ | 8,838.00 | B |
| 3/9/2007 | SELL | 200 | $ | 8.6000 | $ | 1,720.00 | B |
| 3/9/2007 | SELL | 800 | $ | 8.5500 | $ | 6,840.00 | B |
| 3/9/2007 | SELL | 600 | $ | 9.3900 | $ | 5,634.00 | B |
| 3/9/2007 | SELL | 400 | $ | 8.9500 | $ | 3,580.00 | B |
| 3/9/2007 | SELL | 2,400 | $ | 8.5000 | $ | 20,400.00 | A |
| 3/14/2007 | SELL | 3,000 | $ | 6.0875 | $ | 18,262.50 | A |
| 3/14/2007 | SELL | 1,000 | $ | 6.0875 | $ | 6,087.50 | A |