1   ALAN BERG (Bar No. 100288)
        alanhd@aol.com
2   LAW OFFICE OF ALAN BERG
    15165 Ventura Boulevard, Suite 400
3   Sherman Oaks, California 91403
    Telephone:  (818) 788-8300
4   Facsimile:  (818) 788-8104

5   SHERRIE R. SAVETT
        ssavett@bm.net
6   DOUGLAS M. RISEN
        drisen@bm.net
7   BERGER & MONTAGUE, P.C.
    1622 Locust Street
8   Philadelphia, PA  19103-6365
    Telephone:  (215) 875-3000
9   Facsimile:   (215) 875-4604

10

11  Attorneys for Plaintiff JOE VERNE,
    Individually and On Behalf of All Others Similarly Situated

12              **UNITED STATES DISTRICT COURT**

13              **CENTRAL DISTRICT OF CALIFORNIA**

14                    **WESTERN DIVISION**

15

16  | **JOE VERNE**, Individually and On Behalf of All Others Similarly Situated, | No. CV07-0320 JUS (ANx) |
    |---|---|
17  | Plaintiff, | |
18  | v. | |
19  | **NEW CENTURY FINANCIAL CORPORATION, BRAD A. MORRICE, ROBERT K. COLE, PATTI M. DODGE, EDWARD F. GOTSCHALL, BEAR STEARNS & CO. INC., MORGAN STANLEY & CO. INC., STIFEL NICOLAUS & CO., INC. and JEFFRIES & CO. INC.,** | **CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**  **DEMAND FOR JURY TRIAL** |
20  | | |
21  | | |
22  | | |
23  | | |
24  | Defendants | |

25

26

27

28

2007 MAR 16 PM 3: 54
FILED

1

## INTRODUCTION

2

3        Plaintiff makes the following allegations, except as to allegations specifically

4    pertaining to plaintiff and his counsel, based upon the investigation undertaken by

5    plaintiff's counsel, which investigation included analysis of publicly-available news

6    articles and reports, public filings, press releases, Securities and Exchange

7    Commission ("SEC") filings, and other matters of public record.

## NATURE OF THE ACTION

8

9        1.    This is a securities class action on behalf of all persons who purchased

10   or otherwise acquired the Series B Cumulative Redeemable Preferred Stock ("Series

11   B Preferred Stock") of New Century Financial Corporation ("New Century" or the

12   "Company") between August 15, 2006 and February 7, 2007 (the "Class Period"),

13   against New Century and certain of its officers and/or

14   directors, and the underwriters of its Series B Preferred Stock offering, seeking to

15   pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act") and

16   the Securities Act of 1933 (the "Securities Act").

17       2.    New Century is a real estate investment trust that, through its

18   subsidiaries, operates mortgage finance companies. The Company originates and

19   purchases primarily first-mortgage loans worldwide. New Century is headquartered

20   in Irvine, California.

21       3.    During the Class Period, defendants issued materially false and

22   misleading statements regarding the Company's business and financial results. As

23   a result of defendants' false statements, New Century Series B Preferred Stock traded

24   at artificially inflated prices during the Class Period, reaching a high of $25.56 per

25   share on November 24, 2006.

26       4.    On February 7, 2007, after the market closed, New Century issued a

27   press release entitled "New Century Financial Corporation to Restate Financial

28                                          2

1  Statements for the Quarters Ended March 31, June 30 and September 30, 2006." The
2  press release stated in part:

3      New Century Financial Corporation (NYSE: NEW), a real estate
4      investment trust (REIT), today announced that **it will restate its**
5      **consolidated financial results for the quarters ended March 31, June**
6      **30 and September 30, 2006 to correct errors the company**
7      **discovered in its application of generally accepted accounting**
8      **principles regarding the company's allowance for loan repurchase**
9      **losses**.

10         The company establishes an allowance for repurchase losses on
11     loans sold, which is a reserve for expenses and losses that may be
12     incurred by the company due to the potential repurchase of loans
13     resulting from early-payment defaults by the underlying borrowers or
14     based on alleged violations of representations and warranties in
15     connection with the sale of these loans. When the company repurchases
16     loans, it adds the repurchased loans to its balance sheet as mortgage
17     loans held for sale at their estimated fair values, and reduces the
18     repurchase reserve by the amount the repurchase prices exceed the fair
19     values. During the second and third quarters of 2006, the company's
20     accounting policies incorrectly applied Statement of Financial
21     Accounting Standards No. 140 - Accounting for Transfers and Servicing
22     of Financial Assets and Extinguishment of Liabilities. Specifically, the
23     company did not include the expected discount upon disposition of
24     loans when estimating its allowance for loan repurchase losses.

25         In addition, the company's methodology for estimating the volume
26     of repurchase claims to be included in the repurchase reserve calculation

27

28                                          3

did not properly consider, in each of the first three quarters of 2006, the growing volume of repurchase claims outstanding that resulted from the increasing pace of repurchase requests that occurred in 2006, compounded by the increasing length of time between the whole loan sales and the receipt and processing of the repurchase request.

Importantly, the foregoing adjustments are generally non-cash in nature. Moreover, the company had cash and liquidity in excess of $350 million at December 31, 2006.

Although the company's full review of the legal, accounting and tax impact of the restatements is ongoing, **at this time the company expects that, once restated, its net earnings for each of the first three quarters of 2006 will be reduced.**

In light of the pending restatements, the company's previously filed condensed consolidated financial statements for the quarters ended March 31, June 30 and September 30, 2006 and all earnings-related press releases for those periods should no longer be relied upon. The company expects to file amended Quarterly Reports on Form 10-Q for the quarters ended March 31, June 30 and September 30, 2006 as soon as practicable, with a goal to file by March 1, 2007. **The company also expects that the errors leading to these restatements constitute material weaknesses in its internal control over financial reporting for the year ended December 31, 2006.** However, the company has taken significant steps to remediate these weaknesses and anticipates remediating them as soon as practicable.

The company's fourth quarter and full-year 2006 earnings announcement, originally scheduled for February 8, 2007, has been

4

postponed to an undetermined future date, which will follow the company's filing of its amended Quarterly Reports on Form 10-Q for the quarters ended March 31, June 30 and September 30, 2006.

Fourth Quarter 2006 Developments

The increasing industry trend of early-payment defaults and, consequently, loan repurchases intensified in the fourth quarter of 2006. The company continued to observe this increased trend in its early-payment default experience in the fourth quarter, and the volume of repurchased loans and repurchase claims remains high.

In addition, the company currently expects to record a fair value adjustment to its residual interests to reflect revised prepayment, loss and discount rate assumptions with respect to the loans underlying these residual interests, based on indicative market data. While the company is still determining the magnitude of these adjustments to its fourth quarter 2006 results, the company expects the combined impact of the foregoing to result in a net loss for that period. [Emphasis added].

5.    In reaction to the disclosure, New Century's Series B Preferred Stock collapsed, from $24.95 per share on February 7, 2007, to $19.04 on February 12, 2007 – a decline of over 23%. As of March 14, 2007, the Series B Preferred Stock collapsed as low as $6, representing a 76% decline.

**JURISDICTION AND VENUE**

6.    The claims alleged herein arise under Sections 11, 12(a)(2) and 15 of the Securities Act of 1933, 15 U.S.C. §§ 77(k), 77l(a)(2) and 77o; and Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder by the SEC.

1    7.    This Court has jurisdiction over the subject matter of this action pursuant

2    to Section 22 of the Securities Act, 15 U.S.C. § 77v, Section 27 of the Exchange Act,

3    15 U.S.C. § 78aa, and 28 U.S.C. § 1331.

4    8.    Venue is proper in this District pursuant to Section 22 of the Securities

5    Act and Section 27 of the Exchange Act, 15 U.S.C. § 77v and 15 U.S.C. § 78aa.

6    Many of the acts and transactions giving rise to the violations of law complained of

7    herein, including the preparation and dissemination to the investing public of false

8    and misleading information, occurred in this District.   Further, the Company's

9    corporate headquarters are located in this Judicial District.

10    9.    In connection with the acts, conduct and other wrongs complained of

11    herein, defendants, directly or indirectly, used the means and instrumentalities of

12    interstate commerce, including the United States mails and interstate telephone

13    communications, and the facilities of the national securities exchanges.

14                                    **PARTIES**

15    10.    Plaintiff Joe Verne purchased New Century's Series B Preferred Stock

16    traceable to an initial public offering ("IPO"), pursuant to the terms of a registration

17    statement, prospectus, and prospectus supplement filed by New Century on April 26,

18    2005, May 6, 2005, and August 15, 2006, (the "Registration Statement", the

19    "Prospectus", and the "Prospectus Supplement", respectively), as set forth in the

20    accompanying certification which is incorporated herein by reference.

21    11.    Defendant New Century is a real estate investment trust that through its

22    subsidiaries operates mortgage finance companies.   The Company originates and

23    purchases primarily first-mortgage loans worldwide.  New Century is headquartered

24    in Irvine, California.

25    12.    Defendant Brad A. Morrice ("Morrice") co-founded New Century in

26    1995.  Defendant Morrice is, and at all relevant times was, Vice Chairman of the

27

28                                        6

1  Board, President and Chief Executive Officer ("CEO") of New Century. During the
2  Class Period, Morrice was responsible for the Company's false financial statements.

3          13.    Defendant Robert K. Cole ("Cole") co-founded New Century in 1995.
4  Defendant Cole is, and at all relevant times was, a director of the Company and until
5  December 2006 was Chairman of the Board and from December 1995 to July 2006
6  was CEO of the Company. During the Class Period, Cole was responsible for the
7  Company's false financial statements.

8          14.    Defendant Patti M. Dodge ("Dodge") has been Executive Vice President,
9  Investor Relations, of the Company since November 2006, and from July 2004
10 through November 2006 was Chief Financial Officer ("CFO") of New Century.
11 During the Class Period, Dodge was responsible for the Company's false financial
12 statements.

13         15.    Defendant Edward F. Gotschall ("Gotschall") co-founded the Company
14 in 1995. Defendant Gotschall is, and at all relevant times was, Chairman-Finance of
15 the Board, Vice Chairman of the Board and a director of the Company. During the
16 Class Period, Gotschall was responsible for the Company's false financial statements.

17         16.    Defendants Morrice, Cole, Dodge and Gotschall (the "Individual
18 Defendants"), because of their positions with the Company, possessed the power and
19 authority to control the contents of New Century's prospectuses and supplements
20 thereto, registration statements, quarterly reports, press releases and presentations to
21 securities analysts, money and portfolio managers and institutional investors, *i.e.*, the
22 market. They were provided with copies of the Company's reports and press releases
23 alleged herein to be misleading prior to or shortly after their issuance and had the
24 ability and opportunity to prevent their issuance or cause them to be corrected.
25 Because of their positions with the Company, and their access to material non-public
26 information available to them but not to the public, Morrice, Cole, Dodge and

27

28                                                7

1  Gotschall knew that the adverse facts specified herein had not been disclosed to and
2  were being concealed from the public and that the positive representations being
3  made were then materially false and misleading.

4      17.    Defendant Bear Stearns & Co. Inc. ("Bear Stearns") served as an
5  underwriter of New Century's Series B Preferred Stock offering. Pursuant to the
6  Prospectus Supplement, Bear Stearns purchased 750,000 shares of New Century's
7  Series B Preferred Stock for sale directly to the public at the initial public offering
8  price of $25 per share.

9      18.    Defendant Morgan Stanley & Co. Inc. ("Morgan Stanley") served as an
10 underwriter of New Century's Series B Preferred Stock offering. Pursuant to the
11 Prospectus Supplement, Morgan Stanley purchased 750,000 shares of New Century's
12 Series B Preferred Stock for sale directly to the public at the initial public offering
13 price of $25 per share.

14     19.    Defendant Stifel Nicolaus & Co., Inc. ("Stifel Nicolaus") served as an
15 underwriter of New Century's Series B Preferred Stock offering. Pursuant to the
16 Prospectus Supplement, Stifel Nicolaus purchased 380,000 shares of New Century's
17 Series B Preferred Stock for sale directly to the public at the initial public offering
18 price of $25 per share.

19     20.    Defendant Jeffries & Co., Inc. ("Jeffries") served as an underwriter of
20 New Century's Series B Preferred Stock offering. Pursuant to the Prospectus
21 Supplement, Jeffries purchased 120,000 shares of New Century's Series B Preferred
22 Stock for sale directly to the public at the initial public offering price of $25 per
23 share.

24     21.    Defendants Bear Stearns, Morgan Stanley, Stifel Nicolaus, and Jeffries,
25 collectively referred to herein as the ("Underwriter Defendants"), are liable for the

26
27
28                                    8

1  false and misleading statements in the Registration Statement, Prospectus, and
2  Prospectus Supplement.

3                    **PLAINTIFF'S CLASS ACTION ALLEGATIONS**

4        22.    Plaintiff brings this action as a class action pursuant to Federal Rule of
5  Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all persons who
6  purchased or otherwise acquired New Century's Series B Preferred Stock between
7  August 15, 2006 and February 7, 2007, inclusive (the "Class Period"), and who were
8  damaged thereby.  Excluded from the Class are defendants, members of the
9  immediate family of each of the Individual Defendants, any subsidiary or affiliate of
10 New Century and the directors, officers and employees of New Century or its
11 subsidiaries or affiliates, or any entity in which any excluded person has a controlling
12 interest, and the legal representatives, heirs, successors and assigns of any excluded
13 person.

14       23.    The members of the Class are so numerous that joinder of all members
15 if impracticable.  While the exact number of Class members is unknown to plaintiff
16 at this time and can only be ascertained through appropriate discovery, plaintiff
17 believes that there are hundreds of members of the Class located throughout the
18 United States.  As of February 7, 2007, there were at least 2 million shares of the
19 Series B Preferred Stock outstanding.  Throughout the Class Period, Series B
20 Preferred Stock  was traded on the New York Stock Exchange under the symbol
21 "NEW PrB."  Record owners and other members of the Class may be identified from
22 records maintained by New Century and/or its transfer agents and may be notified of
23 the pendency of this action by mail, using a form of notice similar to that customarily
24 used in securities class actions.

25

26

27

28                                        9

1    24.    Plaintiff's claims are typical of the claims of the other members of the
2  Class as all members of the Class were similarly affected by defendants' wrongful
3  conduct in violation of federal law that is complained of herein.

4    25.    Plaintiff will fairly and adequately protect the interests of the members
5  of the Class and has retained counsel competent and experienced in class and
6  securities litigation.

7    26.    Common questions of law and fact exist as to all members of the Class.
8  Among the questions of law and fact common to the Class are:

9    (a)    whether the federal securities laws were violated by defendants'
10  acts and omissions as alleged herein;

11    (b)    whether defendants participated in and pursued the common
12  course of conduct complained of herein;

13    (c)    whether documents, press releases, and other statements
14  disseminated to the investing public during the Class Period misrepresented material
15  facts about the business, finances, financial condition and prospects of New Century;

16    (d)    whether statements made by defendants to the investing public
17  during the Class Period misrepresented and/or omitted to disclose material facts about
18  the business, finances, value, performance and prospects of New Century;

19    (e)    whether the market price of New Century's Series B Preferred
20  Stock during the Class Period was artificially inflated due to the material
21  misrepresentations and failures to correct the material misrepresentations complained
22  of herein; and

23    (f)    to what extent the members of the Class have sustained damages
24  and the proper measure of damages.

25    27.    A class action is superior to all other available methods for the fair and
26  efficient adjudication of this controversy since joinder of all members is
27

28                                        10

1   impracticable. Furthermore, as the damages suffered by individual Class members

2   may be relatively small, the expense and burden of individual litigation make it

3   impossible for members of the Class to individually redress the wrongs done to them.

4   There will be no difficulty in the management of this suit as a class action.

5
### BACKGROUND

6       28.   New Century is a real estate investment trust that, through its

7   subsidiaries, operates mortgage finance companies. The Company originates and

8   purchases primarily first-mortgage loans worldwide. The Company focuses on

9   lending to individuals whose borrowing needs are generally not fulfilled by

10   traditional financial institutions because they do not satisfy the credit, documentation

11   or other underwriting standards prescribed by conventional mortgage lenders and

12   loan buyers. The Company originates and purchases mortgage loans through two

13   divisions: Wholesale Division and Retain Division.

14       29.   The Class Period begins on August 15, 2006 – the date that New Century

15   filed its Prospectus Supplement for its IPO of Series B Preferred Stock. That filing

16   incorporated both historical and future financial statements and registration

17   statements by reference, stating in relevant part:

18       We incorporate herein by reference the documents listed below and any

19       other information we file with the Securities and Exchange Commission

20       under Sections 13(a), 13(c), 14 or 15(d) of the Exchange Act, including

21       any filings after the date of this prospectus supplement until the offering

22       is completed:

23       our Annual Report on Form 10-K for the fiscal year ended December 31,

24       2005, filed on March 16, 2006, including those portions incorporated by

25       reference therein of our Definitive Proxy Statement on Schedule 14A,

26       filed on April 4, 2006;

27

28                   11

1  **our Quarterly Reports on Form 10-Q for the quarter ended March**

2  **31, 2006, filed on May 10, 2006, and for the quarter ended June 30,**

3  **2006, filed on August 9, 2006;** (Emphasis added)

4  our Current Reports on Form 8-K . . .

5  the description of our common stock contained in our Registration

6  Statement on Form 8-A, filed with the Securities and Exchange

7  Commission on September 30, 2004, and any amendment or report filed

8  for the purpose of updating such description; and

9  the description of our Series A Preferred Stock, contained in our

10  Registration Statement on Form 8-A, filed with the Securities and

11  Exchange Commission on June 20, 2005, and any other amendment or

12  report filed for the purpose of updating such description.

13  In addition, we also incorporate by reference into this prospectus

14  supplement additional information that we may subsequently file with

15  the Securities and Exchange Commission under Sections 13(a), 13(c),

16  14 or 15(d) of the Exchange Act prior to the termination of the offering.

17  These documents include Annual Reports on Form 10-K, Quarterly

18  Reports on Form 10-Q and Current Reports on Form 8-K, as well as

19  proxy statements.

20      30.    The Quarterly Reports referenced in the preceding paragraph are

21  precisely those financial statements that are being restated, which New Century has

22  now admitted were materially false and misleading when made.

23      31.    New Century announced on February 8, 2007 that it will restate its

24  consolidated financial results for the quarters ended March 31, June 30 and

25  September 30, 2006 to correct errors the company discovered in its application of

26  GAAP.

27

28                                              12

**DEFENDANTS' FALSE AND MISLEADING STATEMENTS**

32.    On May 4, 2006, the Company issued a press release entitled "New Century Financial Corporation Reports Strong First Quarter 2006 Results; Company Achieved Earnings-per-Share of $1.79." The press release stated in part:

> New Century Financial Corporation (NYSE: NEW), a real estate investment trust (REIT) and parent company of one of the nation's premier mortgage finance companies, today reported results for the three months ended March 31, 2006.
>
> First Quarter 2006 Highlights
>
> - Earnings-per-share (EPS) of $1.79
> - REIT taxable income(1) of $1.78 per share fully covered the corresponding dividend of $1.75 per share
> - After-tax return on equity(2) was 19.5 percent
> - Securitized $1.7 billion of mortgage loans at the REIT
> - Total loan production was $13.4 billion in the first quarter 2006 and $4.7 billion in April 2006
> - Maintained non-prime loan acquisition costs (LAC) at 1.66 percent
> - Reaffirms 2006 dividend guidance of $7.30 per share
>
> Financial Results
>
> "We achieved strong first quarter 2006 results highlighted by 21 percent growth in EPS, a 17 percent increase in REIT taxable income, and 31 percent growth in mortgage loan production compared with the same period last year," said Robert K. Cole, Chairman and Chief Executive Officer. "We are also pleased to have maintained low loan acquisition costs, achieved our targeted net operating margin range for

the quarter, and added mortgage loans to our REIT portfolio, which will contribute to our ability to pay our projected dividend of $7.30 per share for 2006."

The company reported net earnings of $103.7 million, or $1.79 per share, for the first quarter of 2006, compared with $84.8 million, or $1.48 per share, for the same period in 2005. The year-over-year increase in net earnings was primarily attributable to the growth in mortgage loan production volume and greater contributions to net earnings from the company's REIT portfolio.

Mortgage Loan Portfolios

During the first quarter of 2006, the company completed two securitizations structured as financings totaling $1.7 billion in mortgage loans at the REIT, including one securitization consisting solely of $0.3 billion of second lien collateral. Substantially all of the collateral in the $0.3 billion securitization represents second mortgage loans originated in connection with the company's 80/20-mortgage product. "We believe the securitization of second trust deeds allowed us to capture the full economic value of that particular pool of loans," said Kevin M. Cloyd, President of NC Capital Corporation, the company's secondary marketing subsidiary. "The remaining $1.4 billion of mortgage loans securitized was representative of our core non-prime mortgage loan production and received favorable credit enhancement from rating agencies as a result of lower loss coverage requirements."

At March 31, 2006, the balance of the REIT mortgage loan portfolio was $14.1 billion and the balance of the taxable REIT subsidiary (TRS) mortgage loan portfolio was $2.1 billion. The

14

allowance for losses on loans held for investment was $186.0 million and $23.8 million for the REIT and TRS portfolios, respectively, representing 1.32 percent and 1.14 percent of the unpaid principal balance of the respective portfolios. This compares with 1.23 percent and 1.22 percent of the unpaid principal balance of the respective portfolios at December 31, 2005. Delinquency rates as of March 31, 2006 and actual losses to date in the company's REIT and TRS portfolios continue to be significantly lower than historical experience. The company's 60-plus day delinquency rates as of March 31, 2006 were 4.46 percent at the REIT and 4.78 percent at the TRS. *While actual losses to date have been significantly lower than the company's expectations, the company continues to build its allowances for loan losses based on various factors, which include seasoning of the portfolios, as well as overall economic and market conditions.* [Emphasis added].

Mortgage Loan Production by Channel -- Non-Prime, Prime and Alt-A

The company originates and purchases mortgage loans through two channels -- Wholesale and Retail. The Wholesale channel originates and purchases mortgage loans through a network of independent mortgage brokers and correspondent lenders solicited by its Account Executives. The company's Retail channel originates mortgage loans directly through its 240 branch offices and its central telemarketing unit, as well as through relationships that are referred or solicited through builders and realtors.

Total Mortgage Loan Production

15

1       Total mortgage loan production for the first quarter of 2006 was

2   $13.4 billion, a 31 percent increase over the same period a year ago.

3   "Our key objectives this year include maximizing the capabilities of the

4   prime and Alt-A platform we acquired in 2005 for future growth and

5   utilizing that acquisition as a catalyst for expanding the mortgage

6   products we offer through each of our delivery channels," said Brad A.

7   Morrice, Vice Chairman, President and Chief Operating Officer. "This

8   quarter's mortgage loan production results were enhanced by $1.9 billion

9   in prime and Alt-A originations and we expect to see even stronger

10  results as we continue the expansion of our product lines across all

11  channels."

12

13      Total mortgage loan production for April 2006 was approximately

14  $4.7 billion, or $0.235 billion in average daily volume, including $4.0

15  billion of Wholesale mortgage loan production and $0.7 billion of Retail

16  mortgage loan production. This compares with $4.5 billion, or $0.214

17  in average daily volume, for April 2005. The weighted average coupon

18  for non-prime production in April 2006 was 8.5 percent.

19  (Footnotes omitted.)

20      33.    On May 10, 2006, the Company filed its Form 10-Q for the first quarter

21  of 2006, which included the same financial results previously reported in its May 4,

22  2006 press release. The Form 10-Q was specifically incorporated by reference in the

23  Prospectus Supplement. The Form 10-Q also included a certification by Cole, which

24  falsely stated:

25

26

27

28                                  16

I, Robert K. Cole, certify that:

1.  I have reviewed this quarterly report on Form 10-Q of New Century Financial Corporation;

2.  Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;

3.  Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report;

4.  The registrant's other certifying officers and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) and internal control over financial reporting (as defined in Exchange Act Rules 13a-15(f) and 15d-15(f)) for the registrant and have:

    a)  Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;

17

b) Designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles;

c) Evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

d) Disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting; and

5. The registrant's other certifying officers and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's board of directors (or persons performing the equivalent functions):

a) All significant deficiencies and material weaknesses in the design or operation of internal control over financial

18

1          reporting which are reasonably likely to adversely affect

2          the registrant's ability to record, process, summarize and

3          report financial information; and

4     b)    Any fraud, whether or not material, that involves

5          management or other employees who have a significant

6          role in the registrant's internal control over financial

7          reporting.

8     34.    Defendants Morrice and Dodge also signed nearly identical

9  certifications, included in the Form 10-Q, and incorporated by reference in the

10 Prospectus Supplement.

11    35.    On August 3, 2006, the Company issued a press release entitled "New

12 Century Financial Corporation Reports Second Quarter 2006 Results; Board Declares

13 Third Quarter Dividend of $1.85 per Share." The press release stated in part:

14       New Century Financial Corporation (NYSE: NEW), a real estate

15       investment trust (REIT) and parent company of one of the nation's

16       premier mortgage finance companies, today reported results for the three

17       and six months ended June 30, 2006.

18    Second Quarter 2006 Results and Highlights

19          •     Earnings-per-share (EPS) of $1.81

20          •     REIT taxable income(1) per share of $1.40

21          •     Total mortgage loan production of $16.2 billion; total loan

22                production for July 2006 of approximately $5.3 billion

23          •     Non-prime net operating margin increased to 1.01 percent

24          •     Non-prime loan acquisition costs (LAC) decreased to 1.51

25                percent

26          •     Prime/Alt-A platform achieved profitability

27

28                              19

1   •   After-tax return on equity(2) was 19.8 percent

2   •   Board declared third quarter dividend of $1.85 per share

3   •   Reaffirmed 2006 dividend guidance of $7.30 per share

4   •   Chief Financial Officer Patti M. Dodge to transition to

5       newly created executive role when successor is in place

6   "Our second quarter results are evidence of the strength and

7   stability of our franchise," said Brad A. Morrice, President and Chief

8   Executive Officer. "We achieved the second highest quarterly loan

9   production volume in our history, while substantially improving our

10  operating margin over the first quarter in a challenging environment. As

11  a result, our second quarter net earnings were $105.5 million, or $1.81

12  per share, an 11 percent increase in net earnings compared with the

13  second quarter of 2005. These results are particularly impressive

14  considering that we only sold or securitized 82 percent of the loans we

15  originated in the second quarter, increasing loans held for sale by $3.0

16  billion. These loans are covered by forward sales commitments with

17  premiums in excess of 102, so we expect to realize the related earnings

18  in the third quarter."

19          Mortgage Loan Portfolios

20          During the second quarter of 2006, the company completed $1.7

21  billion in securitizations structured as financings at the REIT level,

22  including the company's first Alt-A loan securitization of $0.5 billion

23  and a $1.2 billion securitization of non-prime product. "The Alt-A

24  transaction enhanced our secondary market execution and diversified

25  our REIT portfolio of mortgage loans with a new asset class," said

26

27

28                                  20

Kevin M. Cloyd, President of NC Capital Corporation, the company's secondary marketing subsidiary.

*At June 30, 2006, the balance of the mortgage loan portfolio was $16.0 billion. The allowance for losses on loans held for investment was $209.9 million, representing 1.31 percent of the unpaid principal balance of the portfolio. This compares with 0.79 percent of the unpaid principal balance of the portfolio at June 30, 2005 and 1.30 percent of the portfolio at March 31, 2006. Delinquency rates as of June 30, 2006 in the company's portfolio continue to be significantly lower than historical experience. The company's 60-plus day delinquency rate as of June 30, 2006 was 4.61 percent compared with 4.50 percent in the previous quarter. The company's 2005 and 2006 vintages are experiencing more normalized delinquency trends than the 2003 and 2004 vintages, which have performed exceptionally well when compared with historical experience. "We are comfortable with our current loan loss reserve levels, which take into consideration not only normal portfolio seasoning but also our higher cumulative loss expectations for the newer vintages," said Patti M. Dodge, Executive Vice President and Chief Financial Officer.* [Emphasis added].

REIT portfolio income declined to $52.0 million in the second quarter of 2006 compared with $83.3 million in the first quarter. REIT portfolio income was $79.2 million in the second quarter of 2005. The sequential decrease in REIT portfolio income is primarily the result of a lower return-on-assets ("ROA") in the second quarter when compared to the first quarter. ROA declined to 1.49 percent in the second quarter

1     from 2.34 percent in the first quarter as a result of a decrease in interest
2     spread attributable to portfolio seasoning and the expected spread
3     compression that comes with such seasoning. In addition, the company's
4     shift in 2006 to embedding swaps in its securitization transactions,
5     which results in a more level yield over the life of the transaction, also
6     led to a decrease in interest spread. Lower prepayment income, hedge re-
7     balancing gains and income from hedge ineffectiveness and other
8     derivative instruments also had a significant impact on ROA.

10                                    *  *  *

11     Total Mortgage Loan Production

12          Total mortgage loan production for the second quarter of 2006
13     was $16.2 billion, a 20 percent increase over the same period a year ago
14     and a 21 percent increase over the first quarter of 2006. Excluding the
15     prime and Alt- A loan origination platform that was acquired in the third
16     quarter of 2005, second quarter loan production increased 5 percent
17     year-over-year. For the quarter, the company's Wholesale channel
18     originated $13.8 billion of mortgage loans and the Retail channel
19     originated $2.4 billion. "We are pleased with the second quarter's strong
20     loan production volume, which resulted from modest growth in our core
21     non-prime product coupled with the addition of our Prime and Alt-A
22     products," said Mr. Morrice. "Additionally, we introduced a new credit
23     grade during the quarter that serves borrowers with qualifications
24     between Alt-A and non-prime. We believe this AAA credit grade is
25     rapidly gaining acceptance in the market place."

28                                       22

1    Total mortgage loan production for July 2006 was approximately

2    $5.3 billion, including $4.6 billion of Wholesale mortgage loan

3    production and $0.7 billion of Retail mortgage loan production. This

4    compares with $4.6 billion for July 2005.

5 (Footnotes omitted.)

6    36.    On August 9, 2006, the Company filed its Form 10-Q for the second

7 quarter of 2006, which included the same financial results previously reported in its

8 August 3, 2006 press release. The Form 10-Q was specifically incorporated by

9 reference in the Prospectus Supplement. The Form 10-Q also included a certification

10 by Cole, which falsely stated:

11    I, Robert K. Cole, certify that:

12    1.    I have reviewed this quarterly report on Form 10-Q of New

13    Century Financial Corporation;

14    2.    Based on my knowledge, this report does not contain any untrue

15    statement of a material fact or omit to state a material fact

16    necessary to make the statements made, in light of the

17    circumstances under which such statements were made, not

18    misleading with respect to the period covered by this report;

19    3.    Based on my knowledge, the financial statements, and other

20    financial information included in this report, fairly present in all

21    material respects the financial condition, results of operations and

22    cash flows of the registrant as of, and for, the periods presented

23    in this report;

24    4.    The registrant's other certifying officers and I are responsible for

25    establishing and maintaining disclosure controls and procedures

26    (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) and

27

28    23

internal control over financial reporting (as defined in Exchange Act Rules 13a-15(f) and 15d-15(f)) for the registrant and have:

a) Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;

b) Designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles;

c) Evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

d) Disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonably likely

24

1      to materially affect, the registrant's internal control over

2      financial reporting; and

3    5.    The registrant's other certifying officers and I have disclosed,

4      based on our most recent evaluation of internal control over

5      financial reporting, to the registrant's auditors and the audit

6      committee of the registrant's board of directors (or persons

7      performing the equivalent functions):

8      a)    All significant deficiencies and material weaknesses in the

9      design or operation of internal control over financial

10      reporting which are reasonably likely to adversely affect

11      the registrant's ability to record, process, summarize and

12      report financial information; and

13      b)    Any fraud, whether or not material, that involves

14      management or other employees who have a significant

15      role in the registrant's internal control over financial

16      reporting.

17    37.    Defendants Morrice and Dodge signed nearly identical certifications

18  included in the Form 10-Q, and incorporated by reference in the Prospectus

19  Supplement.

20    38.    On November 2, 2006, the Company issued a press release entitled "New

21  Century Financial Corporation Reports Third Quarter 2006 Results and Provides

22  Outlook for 2007; Fourth Quarter Dividend Declared; Brings 2006 Total Dividends

23  to $7.30 per Share." The press release stated in part:

24      New Century Financial Corporation (NYSE: NEW), a real estate

25      investment trust (REIT) and one of the nation's premier mortgage

26

27

28      25

1    finance companies, today reported results for the three and nine months
2    ended September 30, 2006.

3    Highlights

4        •    Earnings-per-share (EPS) was $1.12

5        •    REIT taxable income(1) per share was $0.84

6

7        •    Total mortgage loan production was $15.8 billion

8        •    Non-prime net operating margin was 0.52 percent

9        •    Record low non-prime loan acquisition costs (LAC) of
10            1.49 percent

11        •    After-tax return-on-equity(2) was 12.7 percent

12        •    Announces acquisition of Irwin Mortgage Corporation's
13            servicing operations

14        •    Raised $107 million in gross proceeds of perpetual
15            preferred and trust preferred capital

16        •    Declared fourth quarter dividend of $1.90 per share; results
17            in total 2006 dividends of $7.30 per share

18        •    Appointed Taj S. Bindra as Executive Vice President and
19            Chief Financial Officer

20        •    Announces updated financial and secondary market
21            strategy

22        •    Expects to distribute $400 million or more to stockholders
23            in 2007 through a combination of dividends and common
24            stock repurchases

25    Third Quarter 2006 Results

26

27

28                                26

1     "Current conditions in our industry are clearly challenging," said
2     Brad A. Morrice, President and Chief Executive Officer. "In this
3     context, while our $1.12 quarterly EPS reflects a year-over-year and
4     sequential decline, it is important to point out that a significant item
5     negatively impacting our EPS was a $0.75 per share reduction from
6     marking-to-market our derivatives not qualifying for hedge accounting
7     treatment. Notwithstanding the current quarter's impact, we believe our
8     hedging strategies are effective on an economic basis.

9     "Excluding the hedging-related accounting charges, our operating
10    results were solid. As expected, we maintained loan production volume
11    at a level comparable to the previous quarter, achieved record low loan
12    acquisition costs, and improved portfolio interest spread before the
13    impact of hedging during the third quarter. Partially offsetting these
14    positive trends, gain- on-sale declined as a result of increased rating
15    agency credit enhancement levels and higher loan repurchases and
16    discounted loan sales," said Mr. Morrice.

17    (Footnotes omitted.)

18    39.    On November 9, 2006, the Company filed its Form 10-Q for the third
19    quarter of 2006, which included the same financial results previously reported. The
20    Form 10-Q also included a certification by Cole, which falsely stated:

21    I, Robert K. Cole, certify that:

22    1.    I have reviewed this quarterly report on Form 10-Q of New
23          Century Financial Corporation;

24    2.    Based on my knowledge, this report does not contain any untrue
25          statement of a material fact or omit to state a material fact
26          necessary to make the statements made, in light of the

27

28

1      circumstances under which such statements were made, not

2      misleading with respect to the period covered by this report;

3   3.   Based on my knowledge, the financial statements, and other

4      financial information included in this report, fairly present in all

5      material respects the financial condition, results of operations and

6      cash flows of the registrant as of, and for, the periods presented

7      in this report;

8   4.   The registrant's other certifying officers and I are responsible for

9      establishing and maintaining disclosure controls and procedures

10     (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) and

11     internal control over financial reporting (as defined in Exchange

12     Act Rules 13a-15(f) and 15d-15(f)) for the registrant and have:

13     a)   Designed such disclosure controls and procedures, or

14          caused such disclosure controls and procedures to be

15          designed under our supervision, to ensure that material

16          information relating to the registrant, including its

17          consolidated subsidiaries, is made known to us by others

18          within those entities, particularly during the period in

19          which this report is being prepared;

20     b)   Designed such internal control over financial reporting, or

21          caused such internal control over financial reporting to be

22          designed under our supervision, to provide reasonable

23          assurance regarding the reliability of financial reporting

24          and the preparation of financial statements for external

25          purposes in accordance with generally accepted accounting

26          principles;

27

28                              28

c)    Evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

d)    Disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting; and

5.    The registrant's other certifying officers and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's board of directors (or persons performing the equivalent functions):

a)    All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and

b)    Any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

29

1    40.    Defendants Morrice and Dodge signed nearly identical certifications

2    included in the Form 10-Q.

3                    **THE TRUTH IS REVEALED**

4    41.    On February 7, 2007, after the market closed, the Company issued a

5    press release entitled "New Century Financial Corporation to Restate Financial

6    Statements for the Quarters Ended March 31, June 30 and September 30, 2006." The

7    press release state in part:

8        New Century Financial Corporation (NYSE: NEW), a real estate

9        investment trust (REIT), today announced that it will restate its

10        consolidated financial results for the quarters ended March 31, June 30

11        and September 30, 2006 to correct errors the company discovered in its

12        application of generally accepted accounting principles regarding the

13        company's allowance for loan repurchase losses.

14        The company establishes an allowance for repurchase losses on

15        loans sold, which is a reserve for expenses and losses that may be

16        incurred by the company due to the potential repurchase of loans

17        resulting from early-payment defaults by the underlying borrowers or

18        based on alleged violations of representations and warranties in

19        connection with the sale of these loans. When the company repurchases

20        loans, it adds the repurchased loans to its balance sheet as mortgage

21        loans held for sale at their estimated fair values, and reduces the

22        repurchase reserve by the amount the repurchase prices exceed the fair

23        values. During the second and third quarters of 2006, the company's

24        accounting policies incorrectly applied Statement of Financial

25        Accounting Standards No. 140 - Accounting for Transfers and Servicing

26        of Financial Assets and Extinguishment of Liabilities. Specifically, the

27

28                                    30

1　　company did not include the expected discount upon disposition of

2　　loans when estimating its allowance for loan repurchase losses.

3　　　　　In addition, the company's methodology for estimating the volume

4　　of repurchase claims to be included in the repurchase reserve calculation

5　　did not properly consider, in each of the first three quarters of 2006, the

6　　growing volume of repurchase claims outstanding that resulted from the

7　　increasing pace of repurchase requests that occurred in 2006,

8　　compounded by the increasing length of time between the whole loan

9　　sales and the receipt and processing of the repurchase request.

10　　　　　Importantly, the foregoing adjustments are generally non-cash in

11　　nature. Moreover, the company had cash and liquidity in excess of $350

12　　million at December 31, 2006.

13　　　　　Although the company's full review of the legal, accounting and

14　　tax impact of the restatements is ongoing, at this time the company

15　　expects that, once restated, its net earnings for each of the first three

16　　quarters of 2006 will be reduced.

17　　　　　In light of the pending restatements, the company's previously

18　　filed condensed consolidated financial statements for the quarters ended

19　　March 31, June 30 and September 30, 2006 and all earnings-related

20　　press releases for those periods should no longer be relied upon. The

21　　company expects to file amended Quarterly Reports on Form 10-Q for

22　　the quarters ended March 31, June 30 and September 30, 2006 as soon

23　　as practicable, with a goal to file by March 1, 2007. The company also

24　　expects that the errors leading to these restatements constitute material

25　　weaknesses in its internal control over financial reporting for the year

26　　ended December 31, 2006. However, the company has taken significant

27

1    steps to remediate these weaknesses and anticipates remediating them
2    as soon as practicable.

3        The company's fourth quarter and full-year 2006 earnings
4    announcement, originally scheduled for February 8, 2007, has been
5    postponed to an undetermined future date, which will follow the
6    company's filing of its amended Quarterly Reports on Form 10-Q for the
7    quarters ended March 31, June 30 and September 30, 2006.

8    Fourth Quarter 2006 Developments

9        The increasing industry trend of early-payment defaults and,
10   consequently, loan repurchases intensified in the fourth quarter of 2006.
11   The company continued to observe this increased trend in its early-
12   payment default experience in the fourth quarter, and the volume of
13   repurchased loans and repurchase claims remains high.

14       In addition, the company currently expects to record a fair value
15   adjustment to its residual interests to reflect revised prepayment, loss
16   and discount rate assumptions with respect to the loans underlying these
17   residual interests, based on indicative market data. While the company
18   is still determining the magnitude of these adjustments to its fourth
19   quarter 2006 results, the company expects the combined impact of the
20   foregoing to result in a net loss for that period.

21   42.    On this news, New Century's Series B Preferred Stock collapsed, from
22   $24.95 per share on February 7, 2007, to $19.04 on February 12, 2007 – an initial
23   decline of over 23%.

24   43.    Incredibly, as reported on March 11, 2007 in the *New York Times*, three
25   weeks after the debacle at New Century was revealed, Bear Stearns issued an upbeat
26   report on March 1, 2007.

27

28                                32

1       44.   On March 9, 2007, Bloomberg reported that "New Century Financial

2  Corp. faces likely liquidation on bankruptcy" according to analysts at Merrill Lynch.

3  Analysts Kenneth Bruce and Jason Arnold were quoted in a research note that "we

4  do not think there is much in the way of value for equity holders if NEW fails to

5  resolve its near-term financial problems."

6       45.   On March 13, 2007, New Century revealed that the SEC opened an

7  investigation and that the U.S. Attorney's Office in Los Angeles was pursuing a

8  criminal inquiry, amid speculation that the company is on the verge of bankruptcy.

9  As reported by Bloomberg:

10     The U.S. regulator contacted New Century on March 12 to say it was

11     ``conducting a preliminary investigation involving the company and

12     requesting production of certain documents," Irvine, California-based

13     New Century said today in a regulatory filing.

14     ``The staff of the SEC had also previously requested a meeting with the

15     company to discuss the events leading up to the company's previous

16     announcement of the need to restate certain of its historical financial

17     statements," it said. ``The company intends to cooperate with the

18     requests of the SEC."

19     New Century said it doesn't have the cash to pay creditors that are

20     demanding that the company repurchase all outstanding mortgage loans

21     they financed.

22                   *   *   *

23

24     The company said it also received a grand jury subpoena requesting

25     documents as part of a previously disclosed criminal inquiry by the U.S.

26

27

28                     33

1    Attorney's Office in Los Angeles. That probe is connected to trading in
2    the company's securities as well as accounting errors.

3    The New York Stock Exchange yesterday halted trading of New
4    Century's stock until it decides whether to keep listing the company's
5    securities.

6    46.    As of March 14, 2007, the Series B Preferred Stock was trading at only
7    $6 per share, representing a decline of 76% from its IPO price.

8    47.    New Century has now admitted that it improperly accounted for its
9    allowance for loan loss reserves in violation of Statement of Financial Accounting
10   Standards No. 140, *Accounting for Transfers and Servicing of Financial Assets and*
11   *Extinguishment of Liabilities*, and will restate its results to remove improperly
12   reported income, such that its 1Q 06 through 3Q 06 financial statements were not a
13   fair presentation of New Century's results and were presented in violation of
14   Generally Accepted Accounting Principles ("GAAP") and SEC rules.

15   48.    All of the reported financial statements and the related discussions
16   contained therein, which the Individual Defendants caused the Company to file and
17   issue during the Class Period, and in public reports about and press releases issued
18   by the Company were false products of financial manipulations which deceived
19   members of the investing public who purchased New Century securities based upon
20   those representations.

21   49.    GAAP are those principles recognized by the accounting profession as
22   the conventions, rules and procedures necessary to define accepted accounting
23   practice at a particular time. SEC Regulation S-X (17 C.F.R. §210.4-01(a)(1)) states
24   that financial statements filed with the SEC which are not prepared in compliance
25   with GAAP are presumed to be misleading and inaccurate, despite footnote or other
26   disclosure. Regulation S-X requires that interim financial statements must also

27

28                                        34

comply with GAAP, with the exception that interim financial statements need not include disclosure which would be duplicative of disclosures accompanying annual financial statements. 17 C.F.R. §210.10-01(a).

50.    The fact that New Century will restate its 1Q 06 through 3Q 06 financial statements and that such financial statements should no longer be relied upon is an admission that the financial statements originally issued were false and that the overstatement of income was material. Pursuant to GAAP, as set forth in Accounting Principles Board Opinion ("APB") No. 20, the type of restatement announced by New Century was to correct for material errors in its previously issued financial statements. *See* APB No. 20, ¶¶7-13. Moreover, FASB Statement of Financial Accounting Standard ("SFAS") No. 154, *Accounting Changes and Error Corrections*, states: "Any error in the financial statements of a prior period discovered subsequent to their issuance shall be reported as a prior-period adjustment by restating the prior-period financial statements." SFAS No. 154, ¶25. Thus, GAAP provides that financial statements should be restated in order to correct an error in previously issued financial statements. New Century's restatement is due to an error. Thus, the restatement is an admission by New Century that its previously issued financial results and its public statements regarding those results were false.

51.    Due to these accounting improprieties, the Company presented its financial results and statements in a manner which violated GAAP, including the following fundamental accounting principles:

(a)    The principle that interim financial reporting should be based upon the same accounting principles and practices used to prepare annual financial statements was violated (APB No. 28, ¶10);

(b)    The principle that financial reporting should provide information that is useful to present and potential investors and creditors and other users in

35

1  making rational investment, credit and similar decisions was violated (FASB
2  Statement of Concepts No. 1, ¶34);

3     (c) The principle that financial reporting should provide information
4  about the economic resources of an enterprise, the claims to those resources, and
5  effects of transactions, events and circumstances that change resources and claims to
6  those resources was violated (FASB Statement of Concepts No. 1, ¶40);

7     (d) The principle that financial reporting should provide information
8  about how management of an enterprise has discharged its stewardship responsibility
9  to owners (stockholders) for the use of enterprise resources entrusted to it was
10  violated. To the extent that management offers securities of the enterprise to the
11  public, it voluntarily accepts wider responsibilities for accountability to prospective
12  investors and to the public in general (FASB Statement of Concepts No. 1, ¶50);

13     (e) The principle that financial reporting should provide information
14  about an enterprise's financial performance during a period was violated. Investors
15  and creditors often use information about the past to help in assessing the prospects
16  of an enterprise. Thus, although investment and credit decisions reflect investors'
17  expectations about future enterprise performance, those expectations are commonly
18  based at least partly on evaluations of past enterprise performance (FASB Statement
19  of Concepts No. 1, ¶42);

20     (f) The principle that financial reporting should be reliable in that it
21  represents what it purports to represent was violated. That information should be
22  reliable as well as relevant is a notion that is central to accounting (FASB Statement
23  of Concepts No. 2, ¶¶58-59);

24     (g) The principle of completeness, which means that nothing is left
25  out of the information that may be necessary to insure that it validly represents

26
27
28

36

underlying events and conditions was violated (FASB Statement of Concepts No. 2, ¶79); and

(h)    The principle that conservatism be used as a prudent reaction to uncertainty to try to ensure that uncertainties and risks inherent in business situations are adequately considered was violated. The best way to avoid injury to investors is to try to ensure that what is reported represents what it purports to represent (FASB Statement of Concepts No. 2, ¶¶95, 97).

52.    Further, the undisclosed adverse information concealed by defendants during the Class Period is the type of information which, because of SEC regulations, regulations of the national stock exchanges and customary business practice, is expected by investors and securities analysts to be disclosed and is known by corporate officials and their legal and financial advisors to be the type of information which is expected to be and must be disclosed.

53.    The true facts, which were known by the defendants but concealed from the investing public during the Class Period, were as follows:

(a)    The Company lacked requisite internal controls, and, as a result, the Company's projections and reported results issued during the Class Period were based upon defective assumptions and/or manipulated facts;

(b)    The Company's financial statements, Prospectus, Prospectus Supplement, and Registration Statement were materially misstated due to its failure to properly account for its allowance for loan repurchase losses; and

(c)    The Company's financial statements, Prospectus, Prospectus Supplement, and Registration Statement were materially misstated due to its failure to properly account for its residual interests in securitizations by failing to timely write down the impaired asset.

37

1

**EFFICIENT MARKET**

2      54.    The market for New Century's Series B Preferred Stock was open, well-
3 developed and efficient at all relevant times. As a result of these materially false and
4 misleading statements and failures to disclose, New Century's Series B Preferred
5 Stock traded at artificially inflated prices during the Class Period until the time the
6 truth was finally communicated to the securities markets. Plaintiff and other members
7 of the Class purchased or otherwise acquired New Century's Series B Preferred Stock
8 relying upon the integrity of the Prospectus, Prospectus Supplement (and documents
9 incorporated by reference therein), Registration Statement, and/or the integrity of the
10 market price of New Century's Series B Preferred Stock and market information
11 relating to New Century, and have been damaged thereby.    Under these
12 circumstances, all purchasers of New Century's Series B Preferred Stock during the
13 Class Period suffered similar injury, through their purchases at artificially inflated
14 prices and the resulting price drop upon disclosure of the truth, and a presumption of
15 reliance applies.

16

**LOSS CAUSATION**

17      55.    At all relevant times, the material misrepresentations and omissions
18 particularized in this Complaint directly or proximately caused or were a substantial
19 contributing cause of the damages sustained by plaintiff and other members of the
20 Class. As described herein, before and during the Class Period, defendants made or
21 caused to be made a series of materially false or misleading statements about New
22 Century's business, business practices and operations. These material misstatements
23 and omissions had the cause and effect of creating in the market an unrealistically
24 positive assessment of New Century and its business, finances and operations, thus
25 causing New Century's Series B Preferred Stock to be overvalued and artificially
26 inflated at all relevant times. Defendants' materially false and misleading statements

27

28                                      38

1  during the Class Period resulted in plaintiffs and other members of the Class
2  purchasing New Century's Series B Preferred Stock at an artificially inflated price.
3  Plaintiff and other members of the Class sustained damages, as New Century's Series
4  B Preferred Stock's price plummeted over 23% in response to the February 7, 2007
5  disclosure of the truth.

6  **NO SAFE HARBOR**

7     56.   The statutory safe harbor provided for forward-looking statements under
8  certain circumstances does not apply to any of the allegedly false statements pleaded
9  in this complaint.  The specific statements pleaded herein were not identified as
10  "forward-looking statements" when made.  Nor was it stated with respect to any of
11  the statements forming the basis of this complaint that actual results "could differ
12  materially from those projected."  To the extent there were any forward-looking
13  statements, there were no meaningful cautionary statements identifying important
14  factors that could cause actual results to differ materially form those in the
15  purportedly forwarding-looking statements.  Alternatively, to the extent that the
16  statutory safe harbor does apply to any forward-looking statements pleaded herein,
17  defendants are liable for those false forward-looking statements because at the time
18  each of those forward-looking statement was false, and/or the forward-looking
19  statement was authorized and/or approved by an executive officer of New Century
20  who knew that those statements were false when made.

21  **COUNT ONE**

22  **Against All Defendants For Violations**

23  **of Section 11 of The Securities Act**

24     57.   Plaintiff repeats and realleges allegations 1 through 56, except to the
25  extent such allegations charge the defendants with intentional or reckless misconduct
26  or otherwise sound in fraud.

27

28  39

58.    This Count is brought by Plaintiff pursuant to Section 11 of the Securities Act against all defendants, on behalf of all persons who purchased or otherwise acquired New Century's Series B Preferred Stock in or traceable to the IPO between August 15, 2006 and February 7, 2007.

59.    The Registration Statement prepared by the defendants and distributed in connection with the IPO was inaccurate and misleading, contained misleading statements of material fact, omitted to state other facts necessary to make the statements made not misleading, and failed adequately to disclose material facts as described above.

60.    The Company is the registrant of the securities issued.  The defendants named herein were responsible for the contents and dissemination of the Registration Statement, the Prospectus, and the Prospectus Supplement.

61.    As issuer of the securities, New Century is strictly liable to Plaintiffs and the Class for the misstatements and omissions in the Registration Statement.

62.    The Individual Defendants are all liable as signatories of the Registration Statement.

63.    The Underwriter Defendants are all liable as underwriters of the Series B Preferred Stock offering.

64.    None of the Individual Defendants nor the Underwriter Defendants named herein made a reasonable investigation or had reasonable grounds for the belief that the statements in the Registration Statement, the Prospectus, and the Prospectus Supplement were true and without omissions of any material facts.  Each of the defendants (except for the Company, which is strictly liable) acted negligently.

65.    Plaintiff and the Class have sustained damages.  The value of New Century's Series B Preferred Stock declined substantially on disclosure of the truth, trading well below the IPO price.

40

66.    At the time they purchased New Century securities, Plaintiff and other members of the Class were without knowledge of the facts concerning the wrongful conduct alleged herein.    Less than one year elapsed from the time that Plaintiff discovered, or reasonably could have discovered, the facts upon which this complaint is based until the time that Plaintiff commenced this action.    Less than three years elapsed from the time that the securities upon which this Count is brought were <u>bona fide</u> offered to the public until the time Plaintiff commenced this action.

67.    This Count is not grounded in fraud.

## COUNT TWO

### (Against All Defendants For Violations of Section 12(a)(2) of the Securities Act)

68.    Plaintiff repeats and realleges allegations 1 through 67, except to the extent such allegations charge the defendants with intentional or reckless misconduct or otherwise sound in fraud.

69.    This Count is brought by Plaintiff, pursuant to Section 12(a)(2) of the Securities Act against all defendants.

70.    Each defendant was a seller, offeror and/or solicitor of the Series B Preferred Stock of New Century offered by the Prospectus, Prospectus Supplement, or by other communications.

71.    The Prospectus, Prospectus Supplement, and such other communications contained untrue statements of material fact, omitted to state other facts necessary to make the statements made not misleading, and failed to disclose material facts.

72.    Defendants' actions as seller, offeror and/or solicitor included participating in the preparation of the false and misleading Prospectus and Prospectus Supplement.

41

73.    Defendants owed to the purchasers of New Century securities the duty to make a reasonable and diligent investigation of the statements contained in the IPO materials, including the Prospectus and Prospectus Supplement contained therein, to insure that such statements were true and that there was no omission to state a material fact required to be stated in order to make the statements contained therein not misleading.  Defendants knew of, or in the exercise of reasonable care should have known of, the misstatements and omissions contained in the IPO materials as set forth above.

74.    Defendants were sellers of New Century Series B Preferred Stock within the meaning of §12 in that they held title to the stock and offered and/or sold the stock for financial gain. Defendants were well-positioned to control, and did control, the flow of information to potential purchasers of New Century Series B Preferred Stock and/or supplied or authorized the dissemination of the information contained in the IPO materials, including the Prospectus and Prospectus Supplement, that was provided to purchasers.

75.    Plaintiff and other members of the Class bought New Century Series B Preferred Stock pursuant to the defective IPO materials, including the Prospectus and Prospectus Supplement.  Plaintiff and the other members of the Class did not know of the untruths and omissions contained in the IPO materials, including the Prospectus and Prospectus Supplement.

76.    By reason of the conduct alleged herein, Defendants violated §12(a)(2) of the Securities Act.  Accordingly, those  members of the Class who hold New Century Series B Preferred Stock acquired in or traceable to the IPO have the right to rescind and recover the consideration paid for their shares, with interest thereon, less the amount of any income received thereon, upon tender, and hereby elect to

42

**COUNT FOUR**

**(Violations of Section 10(b) of The**

**Exchange Act And Rule 10b-5 Promulgated**

**Thereunder Against New Century and The Individual Defendants)**

84.     Plaintiff repeats and realleges allegations 1 through 83 above.

85.     As alleged herein solely with respect to plaintiff's Exchange Act claims, New Century and the Individual Defendants acted with scienter in that they knew that the public documents and statements, issued or disseminated by or in the name of the Company were materially false and misleading; knew or recklessly disregarded that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violators of the federal securities laws.

86.     New Century and the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding New Century and its business practices their control over and/or receipt of New Century's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning New Century, were active and culpable participants in the fraudulent scheme alleged herein. New Century and the Individual Defendants knew and/or recklessly disregarded the falsity and misleading nature of the information which they caused to be disseminated to the investing public. The ongoing fraudulent scheme described in this Complaint could not have been perpetrated over a substantial period of time, as has occurred, without the knowledge and complicity of the personnel at the highest level of the Company, including the Individual Defendants.

87.    New Century and the Individual Defendants: (a) knew or recklessly disregarded material adverse non-public information about New Century's financial results and then existing business conditions, which was not disclosed; and (b) participated in drafting, reviewing and/or approving the misleading statements, releases, reports and other public representations of and about New Century.

88.    During the Class Period, New Century and the Individual Defendants, with knowledge of or reckless disregard for the truth, disseminated or approved the false statements specified above, which were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

89.    New Century and the Individual Defendants have violated §10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder in that they: (a) employed devices, schemes and artifices to defraud; (b) made untrue statements of material facts or omitted to state material facts necessary in order to make statements made, in light of the circumstances under which they were made, not misleading; or (c) engaged in acts, practices and a course of business that operated as a fraud or deceit upon the purchasers of Series B Preferred Stock during the Class Period.

90.    Plaintiff and the Class have suffered damage in that, in reliance on the integrity of the market, they paid artificially inflated prices for their Series B Preferred Stock. Such artificial inflation was removed from the share price upon disclosure of the truth. Plaintiff and the Class would not have purchased Series B Preferred Stock at the prices they paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by defendants' false and misleading statements.

45

## COUNT FIVE

### (Violation of Section 20(a) Of The

### Exchange Act Against Individuals Defendants)

91.    Plaintiff repeats and realleges each and every allegation contained above.

92.    The Individual Defendants acted as controlling persons of New Century within the meaning of the Section 20(a) of the Exchange Act.  By reason of their senior executive and/or Board positions they had the power and authority to cause New Century to engage in the wrongful conduct complained of herein.

93.    By reason of such wrongful conduct, the Individual Defendants are liable pursuant to §20(a) of the Exchange Act.  As a direct and proximate result of these defendants' wrongful conduct, plaintiff and the other members of the Class suffered damages in connection with their purchases of Series B Preferred Stock during the Class Period.

**WHEREFORE,** plaintiff prays for relief and judgment, as follows:

(a)    Determining that this action is a proper class action and certifying plaintiff as class representative under Rule 23 of the Federal Rules of Civil Procedure;

(b)    Awarding compensatory damages in favor of plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)    Awarding reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)    Such other and further relief as the Court may deem just and proper.

46

1

2                        **JURY TRIAL DEMANDED**

3          Plaintiff hereby demands a trial by jury.

4

5    DATED: 3-16-07                    **THE LAW OFFICE OF ALAN BERG**

6

7                              By:

8                                    Alan Berg
                                     15165 Ventura Boulevard, Suite 400
9                                    Sherman Oaks, CA 91403
                                     818-716-3060
10                                   818-788-8104 (Fax)
                                     alanhd@aol.com

11                                   **BERGER & MONTAGUE, P.C.**
                                     Sherrie R. Savett
12                                   Douglas M. Risen
                                     1622 Locust Street
13                                   Philadelphia, PA 19103
                                     215-875-3000
14                                   215-875-4604 (Fax)

15                                   **COUNSEL FOR PLAINTIFFS**

16

17

18

19

20

21

22

23

24

25

26

27

28                                   47

**NEW CENTURY FINANCIAL CORPORATION**
**SERIES B CUMULATIVE REDEEMABLE PREFERRED STOCK (NYSE: NEW PrB)**
**CERTIFICATION PURSUANT TO THE FEDERAL SECURITIES LAWS**

I, Joe Verne, ("Plaintiff"), duly swear and say as to the claims asserted under the federal securities laws, that:

1. I have reviewed a draft complaint against New Century Financial Corp. and certain of its officers and directors, I approve of its contents, and I hereby authorize my selected counsel, Berger & Montague P.C., to file a Complaint and a Lead Plaintiff Petition on my behalf.

2. Plaintiff did not purchase the security that is the subject of this action at the direction of counsel or in order to participate in this private action.

3. Plaintiff is willing to serve as representative plaintiff on behalf of the class, including providing testimony at deposition and trial, if necessary.

4. Plaintiff's transactions in New Century Financial Corp's Series B Preferred Stock during the August 15, 2006 through February 7, 2007 Class Period are as follows:

| # of Shares Purchased | Date | Price |
|---|---|---|
| 10,000 | 12/20/06 | $24.80 |

| # of Shares Sold | Date | Price |
|---|---|---|
| 10,000 | 02/13/07 | $19.548 |

5. Plaintiff has not sought to serve as class representative under the United States federal securities laws in the past three (3) years preceding the date on which this certification is signed.

6. Plaintiff has not accepted and will not accept any payment for serving as representative plaintiff on behalf of the class beyond his pro rata share of any recovery, except for any award for reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered by the court.

7. I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed this ___ day of February, 2007, at Highland Beach, Florida.

By: _____
  Joe Verne
  3720 S. Ocean Boulevard, Apt. 1506
  Highland Beach, FL 33487
  561-330-0017

48